908 So.2d 1 (2005)
Dave F. AGUILLARD
v.
AUCTION MANAGEMENT CORP., Gilmore Auction & Realty Company, Bank of New York, and its Servicer, New South Federal Saving Bank.
Nos. 2004-C-2804, 2004-C-2857.
Supreme Court of Louisiana.
June 29, 2005.
*3 Frilot, Partridge, Kohnke & Clements, LC, Michael Hodgson Pinkerton, William Howard Berglund, New Orleans, Counsel for Applicant in No. 2004-C-2804.
Hesni & Parrales, PLC, George Saleem Hesni, II, Gretna, Denisse Yvonne Parrales, Joseph Anthony Delafield, Lake Charles, Counsel for Respondent in No. 2004-C-2804.
Amar D. Sarwal, David M. Gossett, Evan M. Tager, Robin S. Conrad, Gary Judge Russo, Lafayette, Counsel for Amicus Curiae Chamber of Commerce of the United States.
David Joseph Boneno, Counsel for Amicus Curiae Louisiana Bankers Association.
Hesni & Parrales, PLC, George Saleem Hesni, II, Gretna, Yvonne Parrales, Counsel for Applicant in 2004-C-2857.
Frilot, Partridge, Kohnke & Clements, LC, Michael Hodgson Pinkerton, William Howard Berglund, New Orleans, Joseph Anthony Delafield, Lake Charles, Counsel for Respondent in No. 2004-C-2857.
KNOLL, Justice.
This civil case addresses the legal question of whether the court of appeal erred in declaring a contract, including its arbitration agreement, adhesionary. The district court denied the defendants' motion to stay proceedings pending arbitration. The court of appeal affirmed the district court's ruling. We granted this writ particularly to address the validity of the arbitration agreement and to resolve a split among the circuits regarding the enforceability of arbitration agreements contained within consumer standard form contracts under a "contract of adhesion" analysis, a res nova issue before this court. Dave F. Aguillard v. Auction Management Corp., 04-2804 c/w 04-2857 (La.3/11/05), 896 So.2d 47. For the following reasons we reverse, finding the lower courts erred in failing to stay the proceedings pending *4 arbitration and adopt a liberal policy favoring arbitrability.

FACTS AND PROCEDURAL HISTORY
On March 25, 2003, defendant, Gilmore Auction & Realty Company ("Gilmore Realty"), a duly licensed Louisiana auctioneer, conducted a public auction of certain real estate property located in Sulphur, Louisiana. Gilmore Realty, along with Auction Management Corporation ("Auction Management"), the closing coordinator, acted as agents for the owner of the property defendant Bank of New York. The auction property is described in the record as follows:
The East one-half (½) of Lot 6 of the Lawrence R. Kounter subdivision, a subdivision as per plat recorded in the public records of Calcasieu Parish, Louisiana, together with all improvements situated thereon, whose municipal address is 2123 Division Street, Sulphur, Louisiana.
See Official Record of Dave. F. Aguillard v. Auction Management Corp., 04-2804 c/w 04-2857 (La.), 896 So.2d 47 ("Record"), p. 3.
Prior to the auction, Auction Management and Gilmore Realty disseminated a sales brochure to prospective bidders, which pictured and described each of the auctioned properties and the rules that governed the auction. Plaintiff, Dave F. Aguillard, obtained a brochure prior to the event.
On the day of the auction, plaintiff, along with approximately seventeen other individuals, attended the onsite auction for the above described property. Registration for the auction occurred approximately one-half hour prior to the auction. During registration, plaintiff received the "Auction Terms and Conditions," his bidder number, and the Real Estate Agency Disclosure. Prior to bidding and receiving his bidder number, plaintiff was required to sign and deliver before the commencement of the auction the document entitled "Auction Terms & Conditions,"[1] which contained the arbitration clause in dispute. By signing the document, plaintiff "acknowledge[d] that he or she ha[d] read and underst[ood] these AUCTION TERMS & CONDITIONS and agree[d] to be bound thereby." See Auction Terms & Conditions, Record, p. 79.
The entire document was printed in nine-point font, including the arbitration clause found under the section entitled "ANNOUNCEMENTS," providing:
Any controversy or claim arising from or relating to this agreement or any breach of such agreement shall be settled by arbitration administered by the American Arbitration Association under is [sic] rules, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.
In addition to the arbitration clause, the "Auction Terms & Conditions" document contained the following provisions:
All announcements from the Auction Block will take precedence over all previously printed materials and other oral statements made. The Auction Agreement for the Purchase and Sale of Real Estate represents the final contracted terms.
* * *
The sellers reserve the right to withdraw any property from the Auction at any time.

*5 * * *
If the purchaser fails to comply with any of these Auction Terms & Conditions, the sale shall be canceled, and the seller may, at its option retain the earnest money deposit as liquidated damages. If any sale is so canceled prior to the completion of the Auction, the property may, at the Auctioneer's discretion, be re-offered and resold.

* * *
All bidders will be bound by announcements made at the auction, even though a bidder may not have actually heard the announcement.
All potential bidders were required to sign the document prior to receiving a bid number. This document signed by plaintiff is the document which the defendants, who did not sign the document, seek to enforce against plaintiff.
At the auction, plaintiff submitted the highest bid on the residential dwelling and was thereupon required to sign a document entitled "Auction Real Estate Sales Agreement"[2] and to submit his check to Auction Management and Gilmore Realty in the amount of $4,290, which represented ten percent of the sales price on the property, in accordance with the Auction Terms & Conditions.
The seller, Bank of New York, subsequently rejected plaintiff's bid of $42,900, and refused to close the sale of the property, refusing as well to execute the Auction Real Estate Sales Agreement. Bank of New York argued the auction was not an "absolute auction" and any offer to purchase was subject to the seller's confirmation. On or around April 17, 2003, the seller submitted a counter-offer of $53,000. Plaintiff rejected this offer.
Subsequently, plaintiff filed suit to enforce the Auction Real Estate Sales Agreement against Bank of New York and its servicer New South Federal Savings Bank ("New South"), Auction Management, and Gilmore Auction ("defendants"). In response, the defendants filed a joint motion to stay proceedings pending arbitration[3] in accordance with La.Rev.Stat. § 9:4201, contending the arbitration clause contained in the Auction Terms & Conditions document governs this dispute. The district court denied the motion.[4]
*6 In response, the defendants filed an application for supervisory writs with the Third Circuit, which denied the writ and in turn ordered that the writ be converted into an appeal.[5] The court of appeal affirmed the district court's ruling, finding the entire contract between the parties, including the arbitration clause, was adhesionary and lacked mutuality. Dave F. Aguillard v. Auction Management Corp., 04-393, p. 8 (La.App. 3 Cir. 10/13/04), 884 So.2d 1257, 1261. Relying on its previous decisions in Sutton's Steel & Supply, Inc. v. Bellsouth Mobility, Inc., 00-511 (La. App. 3 Cir. 12/13/00), 776 So.2d 589, writ denied, 01-0152 (La.3/16/01), 787 So.2d 316, and Simpson v. Grimes, 02-0869 (La. App. 3 Cir. 5/21/03), 849 So.2d 740, writ denied, 03-2497 (La.12/19/03), 861 So.2d 567, the Third Circuit concluded plaintiff was not in a position to bargain regarding the terms of the agreement with the defendants and was required to sign the document prior to receiving a bid number and participating in the auction. The defendants were clearly in a superior bargaining position. The court noted (1) the document was printed in extremely small type and "the arbitration clause was not distinguished in any way"; (2) the defendants reserved to themselves methods of dispute resolution other than arbitration, which were not available to the auction customer, e.g., the seller had the option to retain the earnest money deposit as liquidated damages and re-offer and resell the property in situations of buyer default; and (3) provisions in the documents provided the defendants the unilateral power to change any or all parts of the contract, including the arbitration clause, simply by verbal announcement at the auction block.
In his dissent, Judge Amy opined the arbitration clause was not part of a contract of adhesion that would render it unenforceable. Rather, he found that neither the print nor the font size of the arbitration clause differed from the remainder *7 of the two-page contract and that the arbitration clause was not hidden in the document in any way. Furthermore, the nature of the underlying real estate transaction was not such a necessary transaction to indicate that the plaintiff was compelled to enter the terms of the contract; rather, plaintiff could have just walked away.
We granted this writ to address whether the court of appeal erred in declaring the arbitration clause adhesionary and to resolve a split among the circuits regarding the enforceability of arbitration agreements in consumer standard form contracts under a "contract of adhesion" analysis, a res nova issue before this Court.

LAW AND ANALYSIS

Arbitration Law
At the outset, we note the positive law of Louisiana favors arbitration. See La.Rev. Stat. § 9:4201. La.Rev.Stat. § 9:4201 specifically provides:
A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
Moreover, La.Rev.Stat. § 9:4202 states that if any suit or proceedings are brought upon any issue referable to arbitration, the court in which suit is pending shall stay the trial of the action pending arbitration:
If any suit or proceedings be brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which suit is pending, upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until an arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with the arbitration.
Such favorable treatment echos the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq. Section 2 of the FAA provides:
A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
Section 3 requires a stay of proceedings in a suit in which a matter is found to be referable to arbitration:
If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.
Unquestionably, the FAA embodies a liberal federal policy favoring arbitration *8 agreements. See Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).
This favorable treatment continues as well in the United States Supreme Court jurisprudence in which the Court has instructed that the effect of Section 2 is to create a body of federal substantive law of arbitrability and any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration. See Moses, 460 U.S. at 24, 103 S.Ct. 927. This construction is applicable "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Id. at 25, 103 S.Ct. 927. The United States Supreme Court has made it clear that the substantive provisions of the FAA preempt state law and govern all written arbitration agreements in contracts connected to transactions involving interstate commerce. Collins v. Prudential Ins. Co. of America, 99-1423, p. 2 (La.1/19/00), 752 So.2d 825, 827.
Moreover, whether a claim is brought in state or federal court, and whether a claim is based on state or federal law, courts must enforce arbitration agreements in contracts covered by the FAA, notwithstanding any state statutory or jurisprudential rules to the contrary. Collins, 99-1423, p. 2, 752 So.2d at 827, citing Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). The phrase "involving commerce" has been interpreted as the functional equivalent of "affecting commerce." Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 277, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Furthermore, the Supreme Court has concluded that Congress intended to exercise its commerce powers to the fullest in legislating in favor of arbitration. Id.
Although the FAA clearly preempts state law in cases involving transactions which affect commerce, see Allied-Bruce, 513 U.S. at 273, 115 S.Ct. 834, the states do retain the ability to regulate contracts involving arbitration agreements and may do so under general contract law as is referenced in the final section of 9 U.S.C. § 2. Id. at 281, 115 S.Ct. 834. Thus, states may invalidate an arbitration clause "upon such grounds as exist at law or in equity for the revocation of any contract." Id. at 281, 115 S.Ct. 834.
"What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal `footing,' directly contrary to the Act's language and Congress' intent. See Volt Information Sciences, Inc., 489 U.S. [468], at 474, 109 S.Ct. [1248], at 1253[, 103 L.Ed.2d 488]." Allied-Bruce, 513 U.S. at 281, 115 S.Ct. 834.
In accordance with La.Rev.Stat. § 9:4202, the defendants in this case sought to have the plaintiff's civil proceeding for breach of contract filed in district court stayed, arguing that under the clear provisions of the arbitration agreement contained in the Auction Terms and Conditions signed by plaintiff prior to participation in the March 25, 2003 auction, the issues raised in plaintiff's civil petition were referable to arbitration. In response, plaintiff requested the district court under its authority provided by La. Rev.Stat. § 9:4201 and 9 U.S.C. § 2 and recognized by Allied-Bruce to regulate contracts involving arbitration agreements under general contract law to declare the arbitration agreement invalid and unenforceable as a contract of adhesion.

Contracts of Adhesion
"Broadly defined, a contract of adhesion is a standard contract, usually in *9 printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party. Often in small print, these contracts sometimes raise a question as to whether or not the weaker party actually consented to the terms. See LSA-C.C. Arts. 1766, 1811; S. Litvinoff, 6 Louisiana Civil Law Treatise  Obligations (Book 1), s 194, pp. 346-349 (1969)." Golz v. Children's Bureau of New Orleans, 326 So.2d 865, 869 (La.1976), appeal dismissed, 426 U.S. 901, 96 S.Ct. 2220, 48 L.Ed.2d 827 (1976). In making its pronouncement, the Golz court referenced Professor Saul Litvinoff, who further elaborated upon the concept of a contract of adhesion:
Contracts are not always formed through a bargaining process. Owing to the necessities of modern life a particular kind of contract has been developed where one of the parties is not free to bargain. That occurs when a business concern carries out its operation through a very large number of contracts entered into with innumerable co-contractants, as is the case with airlines, public utilities, railroad or insurance companies....
In that kind of situation the lack of balance between the parties' positions is evident, as one of them, quite unquestionably, is in a position stronger than the other's. The party in the weaker position is left with no other choice than to adhere to the terms proposed by the other, hence, "contract of adhesion," a successful technical expression coined by a prominent French writer....
Contracts of adhesion are usually contained in standard forms, which is justified by the volume of business transacted by those concerns of the kind referred above. Some clauses printed in those forms, occasionally in small print, may present difficulties of interpretation concerning the advantages allowed to the party in the stronger position. That is actually a problem of acceptance, as the real question is whether the other party truly consented to all the printed terms....
In sum, though a contract of adhesion is also a contract executed in a standard form in the vast majority of instances, not every contract in a standard form may be regarded as a contract of adhesion. Indeed, a standard form may be selected for their contract even by merchants negotiating a sale of goods on an even footing. Nevertheless, whether the contract is one of adhesion or one merely contained in a standard form, the enforceability of certain clauses, usually of the small print variety, may be questionable because the party now placed in a disadvantageous position by that clause was not aware that he was subscribing to it when he entered the contract.
The question, thus, is whether the party gave his consent to the clause in dispute or, when it is clear that it was given, whether that consent was vitiated by error. It is in the light of answers to those question that courts attempt to restore the fairness that is lacking in situations of that kind. [Footnotes omitted]
Saul Litvinoff, Consent Revisited: Offer Acceptance Option Right of First Refusal and Contracts of Adhesion in the Revision of the Louisiana Law of Obligations, 47 La.L.Rev. 699, 757-59 (1986-1987).
In the Golz case, the plaintiffs in a habeas corpus proceeding sought to invalidate and revoke a notarial act of surrender they executed surrendering their child to a licensed adoption agency. The plaintiffs equated the act of surrender to a contract of adhesion, in which because of disparate bargaining ability and the absence of negotiation *10 between attorneys for the respective parties, consent was not free. This Court upheld the act of surrender, finding the plaintiffs were fully aware of the content and effect of the instrument before they signed, given that the caseworker assigned to their case repeatedly explained the consequences of signing the act as did the Attorney-Notary, who carefully read and explained the document to the plaintiffs before they signed it. The Golz court explained:
The Act of Surrender here raises no substantial question as to consent. It is a one-page, typewritten document, captioned Act of [S]urrender of Joshua Golz. Executed in strict conformity with the statute, it serves one purpose and one purpose only. It irrevocably transfers custody of the child to the adoption agency for placement in an adoptive home.
Golz, 326 So.2d at 869. Therefore, the Court concluded the surrender represented a free and deliberate exercise of will.
This Court has not since addressed the issue of contracts of adhesion.[6] We note at this time in accordance with Litvinoff's commentary, that contracts of adhesion are usually contained in standard forms. Litvinoff, supra, at 757. Contrarily, although a contract of adhesion is a contract executed in a standard form in the vast majority of instances, not every contract in standard form may be regarded as a contract of adhesion. Id. at 758. Therefore, we are not willing to declare all standard form contracts adhesionary; rather, we find standard form serves merely as a possible indicator of adhesion.
As recognized by Litvinoff, the real issue in a contract of adhesion analysis is not the standard form of the contract, but rather whether a party truly consented to all the printed terms. Litvinoff, supra, at 758. Thus, the issue is one of consent.[7]
Consent is called into question by the standard form, small print, and most especially the disadvantageous position of the accepting party, which is further emphasized by the potentially unequal bargaining positions of the parties. An unequal bargaining position is evident when the contract unduly burdens one party in comparison to the burdens imposed upon the drafting party and the advantages allowed to that party. Once consent is called into question, the party seeking to invalidate the contract as adhesionary must then demonstrate the non-drafting party either did not consent to the terms in dispute or his consent was vitiated by error,[8] which in turn, renders the contract or provision unenforceable.
In summation, a contract is one of adhesion when either its form, print, or unequal terms call into question the consent of the non-drafting party and it is demonstrated that the contract is unenforceable, *11 due to lack of consent or error, which vitiates consent. Accordingly, even if a contract is standard in form and printed in small font, if it does not call into question the non-drafting party's consent and if it is not demonstrated that the non-drafting party did not consent or his consent is vitiated by error, the contract is not a contract of adhesion.
Although this Court has never applied a contract of adhesion analysis to determine the enforceability and validity of an arbitration agreement, our circuit courts of appeal have extended this analysis to such situations.

Split in Circuits
While the Second and Fourth Circuits adopt a liberal policy favoring arbitration agreements, the First and Third Circuits adopt a conservative policy as to the enforceability of such agreements.

Liberal Policy of Interpretation
As their caselaw demonstrates, both the Second and Fourth Circuits employ a liberal interpretation in determining the enforceability of arbitration provisions. In Stadtlander v. Ryan's Family Steakhouses, 34,384 (La.App. 2 Cir. 4/4/01), 794 So.2d 881, writ denied, 01-1327 (La.6/22/01), 794 So.2d 790, the Second Circuit upheld the enforceability of an arbitration agreement[9] found in a standard form employment-related contract, finding the agreement was not adhesionary. The Stadtlander defendant filed an exception of no cause of action based on a binding arbitration agreement, seeking to dismiss the plaintiff's employment action, in which plaintiff alleged she was forced to work without compensation. In response, plaintiff argued the agreement was adhesionary, and the district court denied defendant's exception. The Second Circuit reversed, finding the agreement was not adhesionary because (1) the plaintiff made no showing that she did not understand the agreement or that she would have refused to work for defendant had she been aware of the import of its terms and (2) there was no evidence of an unequal bargaining position as the plaintiff, who could have found a similar position elsewhere, could have avoided the arbitration agreement had she objected to it by simply choosing to work elsewhere. See Stadtlander, 794 So.2d at 889-90.
Similarly, the Fourth Circuit has upheld arbitration agreements despite allegations that they were adhesionary. In Simpson v. Pep Boys-Manny Moe & Jack, Inc., 03-0358 (La.App. 4 Cir. 4/10/03), 847 So.2d 617, an employer sought to stay an action for compensatory damages against the employer *12 and plaintiff's co-employees due to the presence of a binding arbitration agreement in the standard form employment-related contract.[10] In response, plaintiff sought to declare the agreement adhesionary, and the district court denied defendant's motion to stay. On appeal, the Fourth Circuit concluded the arbitration agreement was not adhesionary because (1) the arbitration agreement was in standard type; (2) the plaintiff had the option of not signing the agreement and finding work elsewhere if he did not wish to be bound to arbitration; and (3) both the employer and employee agreed to severe limits on the right to litigate the majority of claims they may have had against each other. See Simpson, 03-0358, p. 6-7, 847 So.2d at 622-23.
Additionally, in Dufrene v. HBOS Manufacturing, LP, 03-2201 (La.App. 4 Cir. 4/7/04), 872 So.2d 1206, ruling on rehearing, 03-2201 (La.App. 4 Cir. 5/28/04), 872 So.2d at 1212 the defendant sought to stay a redhibition action brought by buyers of a mobile home against their retailer in light of an arbitration agreement addendum[11] *13 to the bill of sale. In response, plaintiffs sought to have the agreement declared adhesionary, and the district court denied defendant's motion to stay. The Fourth Circuit on rehearing in a per curiam again reversed the district court's ruling, finding the agreement was not adhesionary because (1) the language of the arbitration agreement was clear; (2) the print was not unreasonably small; and (3) the provisions of the arbitration were not unreasonably burdensome. The court further found no showing that the plaintiffs were placed in an unequal bargaining position, that they did not understand the agreement, or that they would have refused to purchase the mobile home had they been aware of the import of its terms. See Dufrene, 03-2201, p. 3; 872 So.2d at 1213.

Conservative Policy of Enforceability
In contrast, the First and Third Circuits have employed a conservative interpretation in determining the enforceability of arbitration agreements. In Posadas v. The Pool Depot, Inc., 02-1819 (La.App. 1 Cir. 6/27/03), 858 So.2d 611, writ denied, 03-2125 (La.11/7/03), 857 So.2d 502, the First Circuit declared an arbitration agreement adhesionary[12] and unenforceable. The Posadas defendant sought to stay a suit to rescind the contract filed by the purchaser of a swimming pool against the corporation that sold the pool and to compel arbitration in accordance with the arbitration provisions of the defendant's standard form sales contract. In response, the plaintiff sought to declare the arbitration clause adhesionary, and the district court denied the defendant's motion to compel and stay. The First Circuit affirmed, finding the arbitration clause adhesionary and unenforceable because (1) the print of The Pool Depot standard form contract was exceedingly small and (2) the substance of the arbitration provision was unduly burdensome in that it bound the plaintiff to arbitration, while reserving unto the defendant the option of pursuing other remedies to collect monies owed under the agreement.[13]See Posadas, 02-1819, p. 4-5; 858 So.2d at 614.
*14 Likewise, in Sutton's Steel & Supply, Inc. v. BellSouth Mobility, Inc., 00-511 (La.App. 3 Cir. 12/13/00), 776 So.2d 589, writ denied, 01-0152 (La.3/16/01), 787 So.2d 316, the defendant sought to compel arbitration and stay proceedings in a class action suit for breach of contract and negligent misrepresentation filed by a class of cellular telephone customers against the service provider in accordance with the arbitration clause[14] contained in the standard form contracts between the defendant and the plaintiffs. In response, the plaintiffs argued the arbitration clause was adhesionary and unconscionable due to defendant's superior bargaining position. The district court denied the defendant's motions to compel and stay, and the Third Circuit affirmed, finding the clause adhesionary because (1) the clause was on the defendant's standard form and was in exceedingly small print; (2) the defendant presented no evidence that the plaintiffs were even in a position to bargain over the arbitration provisions in question; and (3) the substance of the arbitration provision was unduly burdensome and extremely harsh in that while the defendant attempted to bind the plaintiffs to arbitration, it reserved unto itself the option of pursuing *15 other remedies, such as the right to pursue an open account debt and collect attorney fees and costs. The court further found that because the term "debt" was not defined in the contract it could easily be construed to apply to any action that one might imagine defendant could pursue against the plaintiffs, and therefore, the promise by defendant to arbitrate was totally illusionary and was actually no promise at all. See Sutton's Steel, 00-511, p. 10-11, 776 So.2d at 596-97.
Additionally, in Simpson v. Grimes, 02-0869 (La.App. 3 Cir. 5/21/03), 849 So.2d 740, writ denied, 03-2497 (La.12/19/03), 861 So.2d 567, the defendants filed exceptions of lack of jurisdiction, prematurity, and no right or cause of action, seeking to dismiss the plaintiffs suit for losses sustained in a self-directed IRA account against their broker and brokerage due to breach of duty in the management of investments in accordance with the arbitration provisions[15] contained in the parties' contract. In response, the plaintiffs sought to have the provisions declared adhesionary, but the district court granted the defendants' exceptions and stayed the *16 proceedings. On appeal, the Third Circuit reversed, finding the arbitration provisions adhesionary, because of lack of mutuality. The court found that the defendants' agreement signed by the plaintiffs allowed the defendants to retain the right to modify at will any and all provisions of the agreement in question, effectively providing the defendants an escape hatch from its promise to be similarly bound to arbitrate all disputes arising between the parties. See Simpson, 02-0869, p. 11-12; 849 So.2d at 748.
Relying on its previous decisions, the Third Circuit in the present case also declared a standard form contract adhesionary because (1) the document was printed in extremely small type and the arbitration clause was not distinguished in any way; (2) the defendants reserved to themselves methods of dispute resolution other than arbitration, which were not available to the auction customer, e.g., the seller had the option to retain the earnest money deposit as liquidated damages and re-offer and resell the property in situations of buyer default; and (3) provisions in the documents provided the defendants the unilateral power to change any or all parts of the contract, including the arbitration clause, simply by verbal announcement at the auction block.

Analysis of Auction Terms & Conditions
In light of the strong presumption in both federal and state law of arbitrability, we find the Third Circuit erred as a matter of law in declaring the arbitration clause adhesionary for several reasons. First, although the arbitration agreement is in relatively small print, neither the print nor the font size of the arbitration agreement differs in any way from the other clauses in the standard form contract. Moreover, the print is not unreasonably small. We further note that the contract at issue was only a two-page document and that each paragraph was separated from the preceding and following paragraphs by what appears to be double spacing. Additionally, the arbitration provision at issue was contained in a single sentence paragraph within the section of the document labeled in capital letters ANNOUNCEMENTS.
Secondly, the court of appeal erroneously found the arbitration agreement unenforceable because it was not distinguished in any way. The United States Supreme Court in Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996), specifically found that the FAA presumption of arbitrability preempted a state statute requiring special notice requirements applicable only to arbitration agreements before an arbitration clause could be enforced. In this case, the arbitration provision, although not distinguished, was not concealed in any way, but rather was contained in a single sentence paragraph separated from the preceding and following paragraphs by double spacing.
Thirdly, we disagree with the appellate court's conclusion that the contract lacked mutuality as to the arbitration agreement, and we find the arbitration clause severely limits both the defendants' and the plaintiff's right to litigate. Nowhere in the document do the defendants reserve to themselves the right to litigate any issue arising from the contract, and further, the reservation of rights contained within the DEFAULT provisions to which the appellate court took such exception, can only be invoked when the purchaser fails to comply with the Auction Terms & Conditions. According to the arbitration agreement, a finding of default must be determined through arbitration.
Moreover, it does not appear that there was such a difference in bargaining positions between the parties so as to justify *17 the application of the principle of contract of adhesion to the arbitration clause. As the dissenting judge noted, the underlying transaction, a real estate auction, does not indicate that it was such a necessary transaction to establish the plaintiff was compelled to enter it. As noted above, each party was strictly limited to arbitration for dispute resolution, and if the plaintiff did not agree with the terms of arbitration or the terms in general, he could have either attempted to negotiate the terms of the contract or refused to participate in the auction.
We find the court of appeal erred in declaring the whole contract governing the terms and conditions of the auction adhesionary and lacking in mutuality. The only issue before the court was the enforceability of the arbitration clause as this matter came before the court through the defendants' motion to stay proceedings pending arbitration. The entire contract was not properly before the court, just the arbitration provisions. The merits are reserved for arbitration.
The Civil Code recognizes the right of individuals to freely contract. La. Civ. Code art.1971; see also, Art. I, § 23 of the Louisiana Constitution of 1974. "`Freedom of contract' signifies that parties to an agreement have the right and power to construct their own bargains." Louisiana Smoked Products, Inc. v. Savoie's Sausage and Food Products, Inc., 96-1716 (La.7/1/97), 696 So.2d 1373, 1380 (citing Blake D. Morant, Contracts Limiting Liability: A Paradox with Tacit Solutions, 69 Tul.L.Rev. 715 (1995)).
It is well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him. See, e.g., Tweedel v. Brasseaux, 433 So.2d 133, 137 (La.1983) (stating: "The presumption is that parties are aware of the contents of writings to which they have affixed their signatures . . . The burden of proof is upon them to establish with reasonable certainty that they have been deceived." "If a party can read, it behooves him to examine an instrument before signing it; and if he cannot read, it behooves him to have the instrument read to him and listen attentatively whilst this is being done."). The plaintiff in this case signed the contract "acknowledg[ing] that he . . . read and [understood the] AUCTION TERMS & CONDITIONS and agree[d] to be bound thereby."
The parties were free to contract to the terms which provided the defendants with the right to make announcements from the Auction Block that would take precedence over all previously printed materials or any other oral statements made or that the Auction Agreement for the Purchase and Sale of Real Estate represented the final contracted terms or even that the Auctioneer would resolve any dispute over matters at the auction and could remove a listed property from the auction at any time with the seller's direction. Moreover, there was no evidence that the plaintiff was not in an equal bargaining position as the defendants because the plaintiff could have avoided arbitration and the contractual provisions as a whole by simply not signing the agreement.
After careful review of the terms of the arbitration clause, we find nothing sufficient to establish the defendants were in such a superior bargaining position as to render the plaintiff a far weaker party or the contract adhesionary, nor do we find anything in the document itself that would call into question the validity of plaintiff's consent to the terms of the agreement as indicated by his signature. The doctrine of contract of adhesion is inapplicable in *18 this case. We now address the defendants' motion for stay pending arbitration.

Motion to Stay Pending Arbitration
"According to [La.Rev.Stat. § 9:]4202, a court shall stay the trial of an action in order for arbitration to proceed if any party applies for such a stay and shows (1) that there is a written arbitration agreement and (2) the issue is referable to arbitration under that arbitration agreement, as long as the applicant is not in default in proceeding with arbitration." International River Center v. Johns-Manville Sales Corp., 02-3060, p. 3 (La.12/3/03), 861 So.2d 139, 141. In this case, unquestionably a written arbitration agreement does exist, and because the issue in this case arises from and is related to the Auction Terms & Conditions and its breach, the issue is referable to arbitration. Moreover, the record establishes the defendants are not in default in proceeding with arbitration.[16] Therefore, we reverse the court of appeal and stay the present district court proceedings pending arbitration in accordance with Section 4202.

Resolving the Split
Finally, addressing the determination of the enforceability of arbitration agreements under a contract of adhesion analysis, we hold that a presumption of arbitrability does exist. Due to the strong and substantial similarities between our state arbitration provisions and the federal arbitration law as seen through a comparison of La.Rev.Stat. §§ 9:4201 and 9:4202 and 9 U.S.C. §§ 2 and 3, the federal jurisprudence provides guidance in the interpretation of our provisions. We, therefore, adopt the United States Supreme Court's interpretation of the federal arbitration law.
Accordingly, even when the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration. The weight of this presumption is heavy and arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue. Therefore, even if some legitimate doubt could be hypothesized, this Court, in conjunction with the Supreme Court, requires resolution of the doubt in favor of arbitration.
In conclusion, we find the court of appeal erred in invalidating the contract as adhesionary and lacking mutuality. We further adopt the liberal interpretation policy favoring arbitrability of the Second and Fourth Circuits.

DECREE
For the foregoing reasons, the judgments of the lower courts that found the contract, including the arbitration clause, adhesionary and lacking in mutuality are reversed, and this matter is stayed pending arbitration.
REVERSED; STAY PENDING ARBITRATION GRANTED.
*19 KIMBALL and JOHNSON, JJ., concur in the result.
WEIMER, J., dissents and assigns reasons.

APPENDIX

SUPREME COURT OF LOUISIANA

NO. 04-C-2804

consolidated with

NO. 04-C-2857

DAVE F. AGUILLARD

VERSUS

AUCTION MANAGEMENT CORP., GILMORE AUCTION & REALTY COMPANY, BANK OF NEW YORK, and its Servicer, NEW SOUTH FEDERAL SAVING BANK

*20 
WEIMER, J., dissenting.
I respectfully dissent.
The plaintiff brought this action based on a contract titled "Auction Real Estate Sales Agreement," executed after the auction was completed and after he submitted the highest bid. The defendants responded with a motion to stay pending arbitration contending a separate agreement titled "Auction Terms and Conditions," executed before the auction, governs. See footnote 2, page 5 of majority opinion.
Noteworthy is that only the agreement titled "Auction Terms and Conditions" contains the arbitration clause. An additional clause states: "The Auction Agreement for the Purchase and Sale of Real Estate represents the final contracted terms." As the majority notes, the plaintiff was the high bidder and submitted a check in the amount of $4,290.00. Significantly, this check was cashed. Logic dictates the auction *21 is complete and any agreement governing the auction is not applicable.
Part of the plaintiff's defense to arbitration is that the Auction Agreement for the Purchase and Sale of Real Estate, as the "final contracted terms," renders the arbitration clause in the Auction Terms and Conditions not applicable. Any ambiguity or contradiction which exists in the language of a contract must be construed against the party who prepared the contract. See Kenner Industries, Inc. v. Sewell Plastics, Inc., 451 So.2d 557 (La. 1984).
Although I realize this defense, itself, can still be raised in arbitration, this presents a vexing threshold legal issue as to whether the arbitration clause is even applicable.
Because I believe this issue should be resolved first, I respectfully dissent.
NOTES
[1] A copy of the Auction Terms & Conditions signed by the plaintiff is contained in the appendix to this opinion taken from the Record, p. 78-79. See Appendix, p. 1.
[2] There are two contracts at issue in this case. One contract is the Auction Terms and Conditions and the other contract is the Auction Real Estate Sales Agreement. The defendants seek to enforce the arbitration agreement contained in the first contract, the Auction Terms and Conditions. The plaintiff seeks to enforce the Auction Real Estate Sales Agreement. This matter came before this Court to review the denial of the defendants' motion to stay proceedings pending arbitration. Therefore, the only contract properly before this Court is the arbitration contract contained within the Auction Terms and Conditions and sole issue before us is the enforceability of the arbitration provisions. The merits of the two contracts are not properly before us and are reserved for arbitration. Accordingly, we pretermit any discussion of the Auction Real Estate Sales Agreement and focus solely upon the arbitration contract.
[3] Prior to the filing of the joint motion, Auction Management and Gilmore Realty filed peremptory exceptions of no cause of action and no right of action, both of which were later withdrawn by defendants. See Record, pp. 34-45.
[4] The district court ruled:

I am not interested in Simpson V. Grimes. You know what I am interested in is: I don't have anybody to tell me anything about this last sentence, "Property is not sole [sic] absolute will be sold subject to seller's confirmation within 48 hours."
And there is nothing in any of these documents that I see that says this is an absolute sale. I have heard no testimony from anybody saying it's an absolute sale or not absolute sale. Y'all drew up the document. You lose. Motion to stay denied.
See Official Trial Transcript ("Transcript"), pp. 63-64, contained in Record, pp. 173-74.
[5] Dave F. Aguillard v. Auction Management Corporation, 03-1461 (La.App. 3 Cir. 1/30/04), provides:

WRIT DENIED. A judgment denying a request for arbitration has been held to be an appealable, interlocutory order. See Grote v. Merrill Lynch, Pierce, Fenner, 96-551 (La.App. 3 Cir. 11/6/96); 682 So.2d 926. Accordingly, the Defendants-Relators have an adequate remedy through an ordinary appeal, and this court will not exercise its supervisory jurisdiction to review the merits of this matter. Douglass v. Alton Ochsner Medical Found., 96-2825 (La.6/13/97); 695 So.2d 953.
However, the delays for seeking an appeal from an interlocutory order refusing to order arbitration begin to run from the oral ruling if the ruling is rendered in open court with all counsel of record present. La.Code Civ.P. art.1914. Warren v. Southern Energy Homes, Inc., XXXX-XXXX (La. App. 3 Cir. 10/4/00), 771 So.2d 214. Since the trial court denied the demand for arbitration in open court on October 14, 2003, the delays for seeking an appeal from this ruling have now expired. Consequently, a motion for appeal filed at this time would be untimely. Regardless, we find that the writ application filed in this court would have been timely if filed as an appeal.
Therefore, in keeping with the holding in Armstrong v. Stein, 94-97 (La.3/18/94); 634 So.2d 845, we hereby consider the application for supervisory writs as a timely filed motion for appeal. The Defendant-Relators must now comply with the other rules governing an appeal. We hereby remand this matter to the trial court for the Defendants-Relators to comply with the other mandates of the Louisiana Code of Civil Procedure governing appeals. Thus, although the Defendants-Relators are deemed to have timely obtained an order granting the appeal, they must obtain a return date, pay all appropriate fees associated with the preparation of the record in this case, and pay the filing fees of the appellate court.
See Record, p. 108-09.
[6] Our research reveals this Court has mentioned, but has not discussed or addressed, the "contract of adhesion" doctrine in the following cases: Meloy v. Conoco, Inc., 504 So.2d 833, 840 (La.1987)(Watson, J., dissenting in part and concurring in part); Hearty v. Harris, 574 So.2d 1234, 1248 (La.1991)(Watson, J., dissenting); Lejano v. Bandak, 97-0388 (La.12/12/97), 705 So.2d 158, 172 (on rehearing)(Calogero, C.J., Lemmon, and Kimball, JJ., dissenting from the denial of the Application for Rehearing).
[7] "A contract is formed by the consent of the parties established through offer and acceptance." La. Civ.Code. art. 1927.
[8] "Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." La. Civ.Code art. 1949.
[9] The agreement provided, in pertinent part:

The following agreement between you and EDSI is a "selection of forum" agreement by which you agree that employment-related disputes between You and the Company [Ryan's] shall be resolved through arbitration. Any arbitration matter shall be heard and decided under the provisions and the authority of the Federal Arbitration Act, 9 U.S.C. § 1, as applicable.
* * *
Any employment-related dispute between the Company, Me, and/or other signatories which would otherwise be brought in State or Federal court will be brought ONLY in the EDSI arbitration forum and under EDSI Rules and Procedures, as modified or amended from time to time. (Other signatories to the same Agreement with EDSI may be, for example, supervisors, managers, and agents of the Company.)
* * *
Except as to claims or charges actually handled within a State or Federal agency, any and all disputes I may have with the Company, or in that company, its supervisors, managers or other agents may have with Me which would otherwise be decided in court, shall be resolved only through arbitration in the EDSI forum and NOT THROUGH LITIGATION IN STATE OR FEDERAL COURT.
See, Stadtlander, 794 So.2d at 887-88.
[10] The arbitration provision provided, in pertinent part:

I recognize that differences may arise between The Pep boys  Manny, Moe and Jack and/or its subsidiary company, The Pep boys  Manny, Moe and Jack of California, ("the Company") and me during or following my employment with the Company, and that those differences may or may not be related to my employment. I understand and agree that by entering into this Agreement to Arbitrate Claims ("Agreement"), I anticipate gaining benefits of a speedy, impartial dispute resolution procedure.
* * *
Claims Covered by the Agreement
The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), whether or not arising out of my application for employment, my employment or the termination of my employment that the Company may have against me or that I may have against the Company or against its officer, directors, employees or agents in their capacity as such or otherwise. The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to, race, sex, religion, national origin, age, marital status, or medical condition, handicap or disability); claims for benefits, (except where an employee benefit or pension plan specifies that its claims procedure shall culminate in an arbitration procedure different from this one), and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, except claims excluded in the following paragraph.
Claims Not Covered by the Agreement
Claims I may have for workers' compensation or unemployment compensation benefits are not covered by this Agreement.
Also not covered are claims by the Company for injunctive and/or other equitable relief for unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information, as to which I understand and agree that the Company may seek and obtain relief from competent jurisdiction.
See Simpson, 03-0358, p. 1-2; 847 So.2d at 619.
[11] The arbitration agreement addendum provided, in pertinent part:

This Arbitration Agreement ("Agreement") is executed contemporaneously with, and becomes part of the Retail Installment or Sales Contract ("Contract") for the purchase of a manufactured home ("Home") as described in the Contract by the purchaser ("Purchaser") from the selling retailer ("Retailer").
The parties agree that all claims, disputes and controversies arising out of or relating in any way to the sale, purchase, or occupancy of the home including, but not limited to, any negotiations between the parties, the design, construction, performance, delivery, condition, installation, financing, repair or servicing of the home and any warranties, either express or implied, pertaining to the home and including any claims for equitable relief or claims based on contract, tort, statute, common law or any alleged breach, default, or misrepresentation, will be resolved by binding arbitration administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules.
See Dufrene, 03-2202, p. 1-2; 872 So.2d at 1209.
[12] The arbitration agreement provided, in pertinent part:

SECTION G) BINDING ARBITRATION AGREEMENT: ANY DISPUTES ARISING IN ANY MANNER RELATING TO THIS AGREEMENT THAT CANNOT BE RESOLVED BY NEGOTIATION BETWEEN THE PARTIES SHALL BE SUBJECT TO MANDATORY, EXCLUSIVE AND BINDING ARBITRATION IN DALLAS COUNTY, TEXAS. . . . THE PURCHASER AND DEALER (THE POOL DEPOT, INC.) AGREE TO ABIDE BY THE RULING OF THE ARBITRATION ASSOCIATION IN LIEU OF FILING A LAWSUIT. . . . NOTHING HEREIN SHALL PROHIBIT DEALER FROM INSTITUTING SUIT TO COLLECT ANY MONIES OWED UNDER THIS AGREEMENT. CLAIMS REGARDING THE APPLICABILITY OF THIS ARBITRATION SECTION OR THE VALIDITY OF THE ENTIRE AGREEMENT SHALL BE RESOLVED BY BINDING ARBITRATION. THIS ARBITRATION AGREEMENT IS MADE PURSUANT TO A TRANSACTION INVOLVING INTERSTATE COMMERCE AND SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT, 9 U.S.C. [§§] 1-16, ("FAA").
See Posadas, 02-1819, p. 3; 858 So.2d at 612.
[13] Recently in Vishal Hospitality, L.L.C., v. Choice Hotel International, Inc., 04-0568 (La. App. 1 Cir. 3/24/05), 907 So.2d 80, the First Circuit again declared an arbitration agreement adhesionary. The defendants filed an application for writ of certiorari with this Court, see 04-C-1058 filed April 25, 2005, which is presently pending.
[14] The arbitration clause provided, in pertinent part:

INDEPENDENT ARBITRATION (PLEASE READ THIS PARAGRAPH CAREFULLY. IT AFFECTS RIGHTS THAT YOU MAY OTHERWISE HAVE.)
(a) COMPANY AND CUSTOMER SHALL USE THEIR BEST EFFORTS TO SETTLE ANY DISPUTE OR CLAIM ARISING FROM OR RELATING TO THIS AGREEMENT. TO ACCOMPLISH THIS, THEY SHALL NEGOTIATE WITH EACH OTHER IN GOOD FAITH. IF COMPANY AND CUSTOMER DO NOT REACH AGREEMENT WITHIN 30 DAYS, INSTEAD OF SUING IN COURT, COMPANY AND CUSTOMER AGREE TO ARBITRATE ANY AND ALL DISPUTES AND CLAIMS (INCLUDING BUT NOT LIMITED TO CLAIMS BASED ON OR ARISING FROM AN ALLEGED TORT) ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR TO ANY PRIOR AGREEMENT FOR CELLULAR PRODUCTS OR SERVICE BETWEEN CUSTOMER AND COMPANY OR ANY OF CUSTOMER'S OR COMPANY'S AFFILIATES OR PREDECESSORS IN INTEREST.
(b) NOTWITHSTANDING THE PROVISIONS OF PARAGRAPH (a), NO CLAIM OR DISPUTE SHALL BE SUBMITTED TO ARBITRATION IF, AT THE TIME OF THE PROPOSED SUBMISSION, SUCH DISPUTE OR CLAIM INVOLVES AN ATTEMPT TO COLLECT A DEBT OWED TO THE COMPANY BY THE CUSTOMER.
(c) THE ARBITRATION OF ANY DISPUTE OR CLAIM SHALL BE CONDUCTED IN ACCORDANCE WITH THE WIRELESS INDUSTRY ARBITRATION RULES ("WIA RULES") AS MODIFIED BY THIS AGREEMENT AND AS ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION ("AAA"). THE WIA RULES AND FEE INFORMATION ARE AVAILABLE FROM COMPANY OR THE AAA UPON REQUEST.
(d) COMPANY AND CUSTOMER ACKNOWLEDGE THAT THIS AGREEMENT EVIDENCES A TRANSACTION IN INTERSTATE COMMERCE AND THAT THE UNITED STATES ARBITRATION ACT AND FEDERAL ARBITRATION LAW SHALL GOVERN THE INTERPRETATION AND ENFORCEMENT OF, AND PROCEEDINGS PURSUANT TO, THIS OR A PRIOR AGREEMENT.
* * *
(j) CUSTOMER AGREES THAT COMPANY AND CUSTOMER EACH IS WAIVING ITS RESPECTIVE RIGHT TO A TRIAL BY JURY. CUSTOMER ACKNOWLEDGES THAT ARBITRATION IS FINAL AND BINDING AND SUBJECT TO ONLY VERY LIMITED REVIEW BY A COURT. IF FOR SOME REASON THIS ARBITRATION CLAUSE IS AT SOME POINT DEEMED INAPPLICABLE OR INVALID, CUSTOMER AND COMPANY AGREE TO WAIVE, TO THE FULLEST EXTENT ALLOWED BY LAW, ANY TRIAL BY JURY. IN SUCH CASE, A JUDGE SHALL DECIDE THE SUBJECT DISPUTE OR CLAIM.
See Sutton's Steel, 00-511, p. 8-9; 776 So.2d at 595-96.
[15] The arbitration agreement provided, in pertinent part:

17.  ARBITATION [SIC] IS FINAL AND BINDING ON THE PARTIES.
 THE PARTIES ARE WAIVING THEIR RIGHTS TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.
 PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS. THE ARBITRATORS' AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF THE RULING BY THE ARBITRATIONS IS STRICTLY LIMITED.
 THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.
THE CUSTOMER AGREES AND BY CARRYING AND [SIC] ACCOUNT FOR THE CUSTOMER, TCLSI AND MORGAN KEEGAN AGREE THAT ALL CONTROVERSIES WHICH MAY ARISE BETWEEN THE PARTIES CONCERNING ANY TRANSACTION OR CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN U.S. PERTAINING TO SECURITIES AND OTHER PROPERTY, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION, ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED PURSUANT TO THE FEDERAL ARBITRATION ACT AND THE LAWS OF THE STATE OF LOUISIANA BEFORE THE AMERICAN ARBITRATION ASSOCIATION, OR BEFORE THE NEW YORK STOCK EXCHANGE, INC. OR AN ARBITRATION FACILITY PROVIDED BY ANY OTHER EXCHANGE OF WHICH TCLSI AND/OR MORGAN KEEGAN IS A MEMBER, OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. OR THE MUNICIPAL SECURITIES RULE MAKING BOARD AND IN ACCORDANCE WITH THE RULES OBTAINING OF THE SELECTED ORGANIZATION. THE CUSTOMER MAY ELECT IN THE FIRST INSTANCE WHETHER ARBITRATION SHALL BE BY THE AMERICAN ARBITRATION ASSOCIATION, OR BY AND EXCHANGE OR SELF REGULATORY ORGANIZATION OF WHICH TCLSI AND/OR MORGAN KEEGAN IS A MEMBER, BUT IF THE CUSTOMER FAILS TO MAKE SUCH ELECTION, BY REGISTERED LETTER OR TELEGRAM ADDRESSED TO TCLSI AT, TCLSI'S MAIN ADDRESS, BEFORE THE EXPIRATION OF TEN DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM AIM OR STEPHENS TO MAKE SUCH ELECTION, THEN TCLSI AND/OR MORGAN KEEGAN MAY MAKE SUCH ELECTION THE AWARD OF THE ARBITRATORS, OR OF THE MAJORITY OF THEM, SHALL BE FINAL, AND JUDGEMENT UPON THE AWARD RENDERED MAY BE ENTERED AND ENFORCED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.
See Simpson, 02-869, p. 5-6; 849 So.2d at 744.
[16] At the hearing, counsel for the defendants explained:

[A] letter dated September 26th from the American Arbitration Association, notifying the parties that my clients and our codefendants have properly complied with the filing requirements of the American Arbitration Association; and thus, the party  the AAA is ready to proceed under the rules of the AAA. And at the present time, the AAA is in the process of determining the location of the arbitration.
Both parties have submitted their arguments as to where the location of the arbitration proceedings should be had. That's the stage of where we are right now.
See Transcript, p. 6-7; Record, p. 116-17.