813 So.2d 1227 (2002)
Michelle Lynn Siverson Tabor THOMAS and Donald David Tabor, Plaintiffs-Appellees,
v.
Ricky Rechell KING and Betty Jean Anderson King, Defendants-Appellants.
No. 35,857-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 2002.
David Lynn White, Bossier City, for Appellants.
*1228 John W. Evans, Jr., Bossier City, for Appellees.
Before BROWN, CARAWAY and DREW, JJ.
CARAWAY, J.
This controversy involves a bond for deed contract for the sale of a residence. After almost five years of living in the residence and making installment payments to an escrow agent to cover mortgage payments on the property, appellants received notice from appellees that they were in default and that the entire balance of the indebtedness owed under the bond for deed was due. Thereafter, appellees recorded a cancellation of the bond for deed and instituted this action to evict appellants. Appellants reconvened seeking to uphold their rights under the bond for deed. The trial court ruled for appellees allowing the cancellation of the bond for deed and ordering the eviction of appellants. Finding a violation of Louisiana's statutory law regulating the bond for deed, we reverse.

Facts
On January 11, 1995, Donald David Tabor ("Tabor") and Michelle Lynn Siverson Tabor Thomas ("Thomas"), then husband and wife[1], entered into a Bond for Deed contract with Ricky Rechell King and Betty Jean Anderson King (the "Kings"), under which they agreed to the future sale of residential property in Bossier City, Louisiana. In exchange for the right of immediate and exclusive occupancy of the property, the Kings agreed to pay the mortgage against the property which had a $82,815.19 balance at that time. Payments were to be made monthly in the amount of $745.26, beginning January 11, 1995, and continuing on the fifteenth day of each succeeding month thereafter. The monthly installment represented $661.19 in principal and interest due on the first mortgage, $66.07 in escrow for ad valorem property taxes and insurance, and $18.00 for the escrow agent's servicing fee. In turn, Tabor and Thomas agreed that after the Kings' payments aggregated an amount sufficient to discharge the first mortgage, they would convey title to the Kings.
The provisions of the bond for deed pertinent to our inquiry read as follows:
BOND FOR DEED: Appearers declare that this Contract is a "Bond for Deed" with each other to the effect that Seller will sell and Purchaser will purchase the immovable Property as hereinafter described with any and all improvements situated thereon.
NOT A SALE: IT IS CLEARLY UNDERSTOOD AND AGREED THAT THIS DOCUMENT IS NOT A SALE, TRANSFER OR CONVEYANCE BUT ONLY A WRITTEN CONTRACT TO SELL, TRANSFER, AND CONVEY THE HEREIN DESCRIBED PROPERTY IN THE FUTURE; PROVIDED ALL OF THE TERMS, CONDITIONS, PAYMENTS AND OBLIGATIONS SET FORTH HEREIN ARE FULLY, COMPLETELY AND THOROUGHLY MET BY PURCHASER.
* * *
LATE PAYMENTS: In the event that any payment is not received by the Escrow Services, Inc. within ten (10) days of the due date or by the twenty-fifth day of the month, whichever occurs first, *1229 Purchaser shall pay Escrow Agent a collection fee in the amount of ten (10%) percent of the total payment due [5% collection fee to Escrow Services, Inc. & 5% late fee to mortgage holders and/or seller], plus any other charges assessed by Mortgagee(s) on the loan(s) described herein under the existing mortgage(s).
* * *
ACCELERATION: Seller may require immediate payment in full of all sums due under this Bond for Deed Contract if:
(a) Within any consecutive twelve month time period, Purchaser defaults by failing to pay in full any two monthly payments required by this Bond for Deed Contract within 60 days of the due date; OR,
(b) Purchaser defaults by failing, for a period thirty days after notice, to perform any other obligation contained in this Bond for Deed Contract.
In the event Seller elects to Accelerate the Principal balance due, Seller shall issue Notice giving Purchaser thirty (30) days to pay all sums due. Purchaser's failure to pay the total amount due (principal, interest, cost and fees) within the stipulated time shall constitute Default as set forth more fully hereinbelow.
* * *
DEFAULT: Appearers further declare that the payment of each installment, plus the payment of all taxes and any state, local or other assessments and insurance premiums is of the essence of this Contract and that if any of the said payments are not paid when due; or if Purchaser shall in any other manner violate the covenants hereunder, then in any of such events, Purchaser shall be in default and Seller shall have the right, at Sellers option:
(a) To seek specific performance of this Contract, and to accelerate all installments due for the unexpired remaining term of this Contract and declare said amount immediately due and payable, together with an attorney's fee of ten (10%) percent of the total amount due by Purchaser in the event an attorney is employed to protect any interest or enforce any rights of Seller under this Contract. Upon payment of all such amounts Seller will immediately convey title to the herein described Property to Purchaser. Purchaser expressly waives demand and all notices of demand; OR
(b) To have this Contract and the Special Mortgage granted hereinabove canceled in accordance with the provisions of R.S. 9:2945 and Civil Code Art. 2017, without the necessity of a judicial dissolution. It is expressly agreed that either Seller or the Escrow Agent named herein, may serve the required forty-five (45) day notice. Purchaser expressly waives any additional time to perform which may be allowed by La. Civil Code. Art. 2013. In such event all of Purchaser's rights under the Contract, shall be forfeited as hereinafter provided.
Contemporaneously with their execution of the bond for deed, Tabor, Thomas and the Kings also executed an escrow agreement with Escrow Services, Inc. The escrow agreement provided that:
The Bond for Deed Contract requires that payments be made in a timely manner by ESCROW SERVICES, INC. to the underlying mortgage company. Therefore, since most mortgage payments are due to the mortgage companies on the first day of each month, it is imperative that ESCROW SERVICES, INC. receive cash or certified payments in advance of the due date of *1230 the mortgage(s) so that the payments can be processed and disbursed in a timely manner.
All funds to be disbursed by ESCROW SERVICES, INC. during the month are due to ESCROW SERVICES, INC. on, or before, the fifteenth day of the preceding month and considered delinquent if not received by the twenty-fifth day of the month. There is no other "grace period."
The Kings commenced monthly payments to Escrow Services beginning on January 20, 1995. Escrow Services'"Balance Sheet Listing" reflects that late fees were assessed against the Kings six times between the inception of the bond for deed in January, 1995, and November, 1999. During that time period, the Kings had tendered fifty-eight payments. Some of the Kings' payments consisted of payments in irregular amounts. Allegedly, because of the irregularity in some of the Kings' payments, late charges were assessed on the underlying mortgage indebtedness and caused Tabor's and Thomas's credit ratings to be negatively affected. Nevertheless, the evidence of the mortgage company's receipt of monthly payments and information allegedly reported to a credit bureau was inconclusive and did not specify how the Kings' payments to Escrow Services caused the alleged problem with payment of the underlying mortgage. No representative from Escrow Services or the mortgage holder testified at trial.
By letter dated November 16, 1999, counsel for Tabor and Thomas mailed a notice of default to the Kings by certified mail, notifying them that $80,543.83, representing the outstanding principal balance under the contract, was due within forty-five days. The letter stated that the Kings were "currently in default on the scheduled payments." The last sentence of the letter stated that "[i]f the total contract amount is not paid within the allowed time limit, the Bond for Deed contract will be cancelled without further notice to you." A companion letter, also dated November 16, 1999, was mailed to Escrow Services notifying it that the Kings "have failed to make the payments as required on this property and therefore, have defaulted on the bond for deed contract."
By letter dated December 10, 1999, the Kings were notified by Escrow Services as follows: "In review of your account our records reflect that your account is current and that payments are made in a timely manner."
On May 11, 2000, an Act of Cancellation of Bond for Deed, executed by Thomas, individually and as agent for her former husband, Tabor, was recorded in the conveyance and mortgage records of Bossier Parish. The instrument directed the Clerk of Court to cancel the bond for deed from the Bossier Parish records. The cancellation alleged that the Kings failed to make payments under the terms of the bond for deed, that they were notified of their default under La. R.S. 9:2945, and that forty-five days had elapsed. A copy of the November 16, 1999 demand letter was attached to the act of cancellation.
During 2000, Betty Jean King filed for Chapter 13 bankruptcy reorganization. Correspondence between her bankruptcy lawyer and Escrow Services during August, 2000, indicates that Tabor and Thomas were trying to regain possession of the property under the theory that the Kings had defaulted and that they had succeeded in cancelling the bond for deed extrajudicially. According to Escrow Services, the Kings remained current on their payments throughout 2000. The property in question was lifted from the automatic stay in bankruptcy by order signed October 24, 2000.
*1231 On March 19, 2001, Thomas, individually and as agent for her former husband, instituted eviction proceedings in district court. The Kings reconvened, alleging that the bond for deed was improperly cancelled. After trial, the trial court rendered judgment dated August 6, 2001, ordering the Kings to vacate the property within forty-eight hours. It is from this judgment that the Kings suspensively appeal.

Discussion
Louisiana has enacted special legislation providing for the bond for deed contract for the conveyance of immovable property. La. R.S. 9:2941, et seq. (hereinafter the "Act"). A bond for deed is defined as "a contract to sell real property, in which the purchase price is to be paid by the buyer to the seller in installments and in which the seller after payment of a stipulated sum agrees to deliver title to the buyer." La. R.S. 9:2941. Under this special contract to sell, possession of the immovable is delivered immediately to the prospective purchaser prior to the payment of the bond for deed installments. The Act provides protection to the purchaser against the seller's prior mortgage encumbrances by requiring, inter alia, the payment of the bond for deed installments through an escrow agent which in turn pays the preexisting mortgage indebtedness. La. R.S. 9:2942-2944.
Another protection afforded the purchaser is set forth in La. R.S. 9:2945(A) which provides:
If the buyer under a bond for deed contract shall fail to make the payments in accordance with its terms and conditions, the seller, at his option, may have the bond for deed cancelled by proper registry in the conveyance records, provided he has first caused the escrow agent to serve notice upon the buyer, by registered or certified mail, return receipt requested, at his last known address, that unless payment is made as provided in the bond for deed within forty-five days from the mailing date of the notice, the bond for deed shall be cancelled.
The leading Louisiana Supreme Court case interpreting this notice provision ruled that the notice requirement is "clear and mandatory." Williams v. Dixie Land Company, 231 La. 834, 93 So.2d 185, 186 (1956). In Williams, the purchaser had been delinquent in the payment of the bond for deed installments for eight years. The seller, instead of giving the statutory notice, sent a letter to the purchaser returning all of the prior payments and claimed rescission of the bond for deed because of the default. The court ruled that the bond for deed had not been rescinded due to the seller's failure to give the "mandatory" statutory notice and awarded the purchaser relief for the value of the property less the unpaid balance due under the bond for deed.[2]
The present bond for deed directly references the notice requirement of Section 2945 of the Act. Nevertheless, other contractual provisions of the bond for deed providing for "late payments," "acceleration," and "default" appear to conflict internally with each other, making the time of default and the seller's remedies, including the extrajudicial remedy of cancellation of the bond for deed, ambiguous. We need not sort out that confusion within the contract because, like Williams, we find that the statutory notice provision of Section 2945 was not followed in this case.
*1232 The November 16, 1999 notice did not afford the Kings the opportunity to bring any delinquent payments current and to maintain their rights under the bond for deed. Instead, the notice demanded payment of the entire balance of the installments owed under the contract within what was asserted to be the forty-five-day statutory period. The notice was not given by the escrow agent. Moreover, the evidence presented at trial does not reveal that on November 16, 1999, the Kings owed anything for prior payments. The records of Escrow Services expressly disclose that the Kings' payments were current. The fact that they may have paid certain prior installments after the fifteenth day of a particular month, or paid an installment partially in multiple payments, allowed Escrow Services to charge late payment fees, which under the terms of the contract, were tied to any corresponding late fees charged by the underlying mortgagee.[3] The late payment fees of Escrow Services were shown to have been assessed and collected during months prior to November 1999.
In conclusion, the condition of non-payment for forty-five days mandated by Section 2945 of the Act and the prerequisite notice were not shown to have occurred in this case. Therefore, as requested by the Kings' reconventional demand, the extrajudicial cancellation of the bond for deed contract recorded by plaintiffs in the records of Bossier Parish is hereby ordered, adjudged and decreed to be annulled. Any notation of cancellation on the bond for deed contract should be erased by the Clerk of Court. The rulings of the trial court are reversed and costs of appeal are assessed to appellees.
REVERSED AND RENDERED.
NOTES
[1] The couple divorced at some point and by the time they were seeking cancellation of the bond for deed, Michelle Lynn Siverson Tabor had remarried and changed her name to Michelle Lynn Siverson Thomas.
[2] Although the factual recitation of the case was unclear, the seller under the bond for deed contract had apparently sold the property to a third party purchaser protected under the public records doctrine.
[3] The circumstances tarnishing Thomas's or Tabor's credit ratings pertaining to the underlying mortgage debt were not detailed at trial. The payment of the mortgage debt by Escrow Services allows for the possibility of fault on its part for the delinquencies, and in fact, in Thomas's testimony, she accused Escrow Services of failing to collect late fees from the Kings. In any event, late fee charges assessed to plaintiffs by the mortgage holder and the effect on their credit rating are not relevant measures for whether this bond for deed may be cancelled.