935 So.2d 746 (2006)
Richard Carl UPTON, Plaintiff-Appellee
v.
James G. WHITEHEAD and Lullie Whitehead, Defendants-Appellants.
No. 41,131-CA.
Court of Appeal of Louisiana, Second Circuit.
June 28, 2006.
*747 Davis Law Office, LLC, by S.P. Davis, Sr., for Appellants.
*748 Robin S. Harvill, Bossier City, for Appellee.
Before BROWN, WILLIAMS and CARAWAY, JJ.
CARAWAY, J.
Following the execution of a written two-year lease of a residence, plaintiff/lessor later agreed to allow the defendants/lessees to acquire the property and receive a deed upon the payment of $28,000 through monthly installments of $269.70. Defendants made payment of the monthly installments for over ten years and then ceased payment claiming the purchase price had been paid. Plaintiff brought this suit to evict defendants, and defendants reconvened asserting their acquisition of the property. Upon the plaintiff's motion for summary judgment, the trial court granted the judgment of eviction finding that any oral agreement concerning the property's transfer was ineffective. For the following reasons, we reverse and remand.

Facts
Richard C. Upton leased residential property located at 1129 Baythorne Drive in Shreveport to James and Lullie Whitehead, husband and wife (hereinafter collectively "Whitehead"), on September 7, 1993. The agreement provided for a two-year term ending on October 1, 1995, with monthly rentals of $269.70 ("Lease Agreement"). Despite the two-year term, Whitehead retained occupancy of the property under an agreement with Upton through the time of this action and paid $269.70 monthly until December 2003.
In 2005, Upton sued for recognition as owner of the property and sought Whitehead's eviction. His verified petition alleged the following:
6.
Subsequent [to the Lease Agreement], the parties orally agreed that, subject to the lease agreement, Petitioner would agree to sell the subject property to the Defendant and execute a deed of transfer upon receipt of the purchase price of $28,000.00 payable at eight (8%) per annum in monthly payments of $269.70. In the event the Defendant opted to purchase the subject property, the Petitioner agreed to apply the monthly rental payments toward the purchase price.
7.
Petitioner shows that payments under the lease agreement are due from January 1, 2004 to present. Petitioner avers that Defendant has failed or refused to comply with his payment obligation and continues to possess the property, despite amicable demand.
Whitehead answered the petition and reconvened, asserting that they entered into a verbal agreement to sell the property for $28,000 at $269.70 per month at 0% interest. Whitehead further alleged that between September 7, 1993, and December 2003, payments totaling $33,173.10 were made to Upton, entitling Whitehead to a $5,173.10 refund.
Thereafter, Upton moved for summary judgment. His affidavit denied the existence of a verbal sale. He asserted that based upon his proof of title, he was entitled to judgment recognizing him as owner and ordering the Whiteheads to surrender possession.
In Whitehead's opposition to the summary judgment, the affidavit of James R. Whitehead asserted the following:
That he and defendant in reconvention [Upton] entered into an oral verbal lease sale of the property known as 1129 Baythorne Drive Shreveport, Louisiana, *749 71129, on October 1, 1995 in the amount of $28,000 dollars at the monthly payment of $269.70 with zero (0) percent interest.
After argument, the trial court took the matter under advisement. Its written opinion found that Upton proved ownership of the property and that Whitehead had failed to prove a verbal transfer. The judgment recognizing Upton's legal ownership and ordering Whitehead to surrender possession was signed on October 18, 2005. Whitehead appeals the judgment.

Discussion
In the trial court's written ruling in this case, it cited Civil Code Article 1839 as the basis for its judgment, which provides in pertinent part as follows:
A transfer of immovable property must be made by authentic act or by act under private signature. Nevertheless, an oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated on oath.
These principles are repeated in the Code's Title VII on Sale, specifically Article 2440, and apply to contracts to sell.
Both parties admit that no written act exists transferring title or otherwise affecting ownership of this disputed immovable after the initial two-year lease. Further, the trial court found there were no admissions under oath by Upton acknowledging an oral agreement affecting the property. This was error. We find from the face of Upton's verified petition and paragraph 6 thereof, as quoted above, an admitted oral agreement by him as owner, conveying rights in the immovable. That agreement, judicially admitted under oath as part of the pleadings, may be enforceable as between these parties to affect ownership of the immovable. La. C.C. arts. 1853 and 2440; Guillotte v. Wells, 485 So.2d 187 (La.App. 2d Cir.1986); Larido v. Perkins, 132 La. 660, 61 So. 728 (1913).
Upton's description of the parties' oral agreement in his petition sets forth the following crucial provisions:
(i) The agreement was reached subsequent to the execution of the written agreement for the two-year lease.
(ii) Upton agreed to sell the property.
(iii) A deed transferring the property would be provided by Upton to Whitehead upon the payment of $28,000 with eight percent interest in monthly installments of $269.70.
In addition to admitting the oral agreement, it is also undisputed by the parties that Upton initially delivered possession to Whitehead under the lease and that possession continued thereafter under the oral agreement. Notably, Whitehead asserted that the effective date of the oral agreement was October 1, 1995, which is the same time the two-year lease would have ended. Upton, whose admission of the oral contract is controlling, has not identified the specific date of his agreement to sell. Finally, the major dispute between the parties which precipitated this suit concerns the interest rate applicable to the payment of the $28,000 price. Again, under the controlling judicial admission of this contract by Upton, the eight percent rate applies, and contrary to Whitehead's assertions, the $28,000 price plus interest had not been satisfied by the time Whitehead ceased making monthly payments in December 2003. As Upton asserts in brief, the amortization calculation reveals a 177-month payout for $28,000 at eight percent with $269.70 monthly installments.
Although the trial court erred in determining that no oral contract affecting the immovable was presented under *750 Article 1839, the summary judgment in Upton's favor may yet be affirmed if Whitehead's admitted cessation of monthly payments under that contract may result in its dissolution. To answer that question, a proper characterization of the oral contract set forth in paragraph 6 of Upton's petition must be made. When a contract can be construed from the four corners of the instrument, or in this case from Upton's admission of the oral contract, the question of contractual interpretation is answered as a matter of law, and summary judgment may be appropriate. Scott v. Red River Waterway Commission, 41,009 (La.App. 2d Cir.4/12/06), 926 So.2d 830; Sea Trek, Inc. v. Sunderland Marine Mut. Ins. Co., 99-893, 99-894 (La. App. 5th Cir.2/16/00), 757 So.2d 805.
Upton's contract was to sell the immovable and execute a deed upon the payment of 177 monthly installments by Whitehead. Significantly, delivery of possession was not executory but immediate. Also, while Upton would characterize the contract as a lease with an option to purchase, the contract clearly implies that at the end of a term of 177 months of timely payments, Whitehead would be entitled to delivery of a deed without the necessity of an election of an option which would amount to acceptance by Whitehead of an offer to sell. Likewise, the contract does not mirror the lease/contract to sell agreement in Kizer v. Burk, 439 So.2d 1051 (La.1980). There, the agreement provided for a three-year lease with rent totaling $12,000 to be applied to the $221,400 sale price. The balance of the sale price was to come due at the end of the three-year lease with the purchaser's payment in the form of additional monies and his execution of a promissory note in conjunction with a credit sale deed.
The Civil Code provisions concerning agreements preparatory to the sale are set forth in Articles 2620, et seq. Article 2620 describes an option as "a contract whereby a party gives to another the right to accept an offer to sell, or to buy, a thing within a stipulated time." Article 2623 defines the contract to sell as "[a]n agreement whereby one party promises to sell and the other promises to buy a thing at a later time, or upon the happening of a condition, or upon performance of some obligation by either party, is a bilateral promise of sale or contract to sell." Since the Code addresses these contractual agreements as preparatory to a sale, the contract to sell would not be expected to transfer possession of the immovable. Delivery of the immovable is deemed to occur under Civil Code Article 2477 upon execution of the writing that transfers its ownership, which would be the contemplated deed. Nevertheless, with the unique "contract to sell" addressed by Louisiana's Bond for Deed Statute (La. R.S. 9:2941, et seq.) as construed by the jurisprudence, occupancy by the purchaser under a bond for deed results immediately, long before the release and recordation of the deed.
A bond for deed is defined as "a contract to sell real property, in which the purchase price is to be paid by the buyer to the seller in installments and in which the seller after payment of a stipulated sum agrees to deliver title to the buyer." La. R.S. 9:2941. Under this special contract to sell, possession of the immovable is delivered immediately to the prospective purchaser prior to the payment of the bond for deed installments. Thomas v. King, 35,857 (La.App. 2d Cir.4/3/02), 813 So.2d 1227. The bond for deed has been interpreted by the jurisprudence as a device to circumvent the normal prohibition against conditional sales, i.e., sales under which passage of title is postponed until payment of the price. Lyons v. Pitts, 40,733 (La.App. 2d Cir.3/8/06), 923 So.2d *751 962; Seals v. Sumrall, 03-0873 (La.App. 1st Cir.9/17/04), 887 So.2d 91; David Levingston, Bond for Deed Contracts, 31 La. L.Rev. 587 (1971); F. Hodge O'Neal, The Conditional Sale in Louisiana, 2 La. L.Rev. 338 (1940). The bond for deed has also been viewed as a security device in favor of the seller. Lyons, supra. The legislature passed the bond for deed law in 1934 with the intent to protect purchasers, who are "generally not as well informed as sellers nor as qualified to protect themselves against sharp practices." Levingston, Bond for Deed Contracts, supra at 587-588, and authorities cited therein. In 1993, recognizing the need for clarification of the substantive effects of the bond for deed legislation, the legislature made the following observation:
[T]he separation of occupancy and ownership under bond for deed may cause uncertainty in certain related areas of the law, such as taxation of property purchased under bond for deed, financing with tax-exempt bonds of property purchased under bond for deed, the application of "due on sale" clauses to bond for deed, general sales law, and the Uniform Commercial Code; . . .
House Concurrent Res. No. 246, 1993 Reg. Sess.
One protection afforded the purchaser under a bond for deed is set forth in La. R.S. 9:2945(A) which provides: "If the buyer under a bond for deed contract shall fail to make the payments in accordance with its terms and conditions, the seller, at his option, may have the bond for deed cancelled by proper registry in the conveyance records, provided he has first caused the escrow agent to serve notice upon the buyer, by registered or certified mail, return receipt requested, at his last known address, that unless payment is made as provided in the bond for deed within forty-five days from the mailing date of the notice, the bond for deed shall be cancelled."
The leading Louisiana Supreme Court case interpreting this notice provision held that the notice requirement is "clear and mandatory." Williams v. Dixie Land Co., 231 La. 834, 93 So.2d 185, 186 (1956). In Williams, the purchaser was delinquent in paying the bond for deed installments for eight years. As in the present case, there was no escrow agreement involved in the parties' transaction. The seller, instead of giving the required statutory notice, sent the purchaser a letter returning all of the prior payments and claimed rescission of the bond for deed because of the default. The court ruled that the bond for deed had not been rescinded due to the seller's failure to give the "mandatory" statutory notice.
This required statutory notice, as construed in Williams, allows the delinquent purchaser protection under a bond for deed. Like a delinquent purchaser/owner under a credit sale deed who may pay off the balance owed to prevent foreclosure and avoid losing any increased equity value of the property, a delinquent bond for deed purchaser receives a special 45-day grace period in which to cure his delinquency.
From our analysis of paragraph 6 of Upton's petition describing the oral contract, we conclude that our law governing the bond for deed contract applies. We therefore reject Upton's claim that he granted a lease purchase agreement or lease with an option to purchase the property. Instead, the agreement contemplated that at the conclusion of the payment of 177 installments, there would be no option requiring Whitehead's election to purchase, but instead the delivery of a deed transferring title to the property would be owed by Upton. This comports *752 with the definition of the bond for deed contract under La. R.S. 9:2941.
With this understanding of the contract as a bond for deed, we find that Upton's motion for summary judgment must be denied and the trial court's judgment reversed. There is no showing in this case that Upton complied with the notice requirement of La. R.S. 9:2945(A). With that material fact issue remaining, the case is remanded for further proceedings consistent with this ruling. Costs are assessed to appellee.
REVERSED AND REMANDED.