MOON LANDRIEU, Judge Pro Tempore.
 

 | [The plaintiff, Ella Bradstreet (“Ms. Bradstreet”), appeals the October 26, 2007 judgment of the trial court in favor of the defendant, Escrow Services, Inc. (“ESI”), sustaining an exception of prematurity, dismissing her suit against ESI and ordering the matter to arbitration.
 
 [1]
 
 We affirm the judgment of the trial court.
 

 FACTS AND PROCEDURAL HISTORY
 

 On July 5, 2005, Ms. Bradstreet and Vernetta Kinchen (“Ms. Kinchen”), the owner of a house located at 2621 Galling-house Street in New Orleans, Louisiana, executed a written contract entitled “Installment Option Agreement” (“the Agreement”) regarding the sale and purchase of the property. The actual written contract consisted of several pre-printed forms and three schedules (Schedules “A,” “B” and “C”) provided by EscroServ, Inc.
 
 [2]
 
 and prepared by Crescent City Title WB, L.L.C. (“Crescent City Title”), the title company handling the transaction. Schedule C of the Agreement indicated the property was encumbered by a mortgage held by AMC Mortgage Services, Inc., as a result of a loan made by |2Ms. Kinchen on March 27, 2003. Ms. Kinchen, a resident of Texas, authorized Chip Julien (“Mr. Julien”) to act as her agent and to sign the Agreement on her behalf.
 

 The Agreement expressly provided:
 

 It is clearly understood and agreed that this Agreement is not a sale, transfer or conveyance but only a written Agreement to sell, transfer, and convey property in the future; provided all terms, conditions, payments and obligations are fully completely and timely met by Purchaser.
 

 In paragraphs 4 and 5 of the pre-printed form, the Agreement is specifically described as “an option.”
 

 Pursuant to the terms of the Agreement, EscroServ, Inc., was designated to serve as the administrator, whose principal responsibility was to accept and disburse the payments required under the Agreement and to discharge associated duties as set forth in the Agreement. The Agreement further allowed EscroServ, Inc., as the administrator, to assign the servicing of the Agreement “... to any person, firm, or corporation.”
 
 [3]
 

 
 *334
 
 Among other terms and conditions, the Agreement gave Ms. Bradstreet (the purchaser) possession and a usufruct of the immovable property during the tenn of the option. Ms. Bradstreet was responsible for the payment of the taxes, insurance, and maintenance applicable to the immovable property and compensation to Ms. I..(Kinchen for the usufruct and the option.
 
 [4]
 
 The Agreement also contained an arbitration clause, which provided:
 

 All controversies between Owner, Purchaser and/or Administrator, or rights of parties hereto, shall be submitted to binding arbitration. All parties hereby waive their rights to a jury trial or other judicial determination. Tort damages, reimbursement rights, deposits, rights to occupancy, attorney’s fees, costs or expenses as a result of this Agreement, may only be asserted in binding arbitration. The parties further waive their right to any claims or counter claims except those asserted within said arbitration proceedings.
 

 Pursuant to the Agreement, beginning July 15, 2005, and on the same day of each succeeding month, Ms. Bradstreet sent a payment of $1292.99 to EscroServ, Inc./ ESI.
 
 [5]
 
 In turn, EscroServ, Inc./ ESI deducted its fee and sent the remainder to AMC Mortgage Services, Inc., as payment on the loan made by Ms. Kinchen. On April 5, 2006, ESI notified Ms. Bradstreet that the amount of the monthly payment was being increased to $1,679.02 due to an increase in the adjustable interest rate on the underlying mortgage. Despite the increase, Ms. Bradstreet continued to make the monthly payments from April 2006 through September 2006, which, by that time, had increased to $1,795.29.
 
 [6]
 

 However, in October, November and December 2006 and January 2007, Ms. Bradstreet defaulted on the payments. ESI, on behalf of Ms. Kinchen, sent Ms. Bradstreet a notice of default dated January 10, 2007, demanding that she remit a payment of $6,372.43 to make her account current as required by the Agreement.
 

 |4In response, Ms. Bradstreet made a payment of $6,400.00, which satisfied only the October, November, and December 2006 payments. On February 22, 2007, Ms. Kinchen advised ESI that Ms. Bradstreet had breached the Agreement, and instructed it to stop accepting any further payments from her or face legal action.
 

 On February 25, 2007, ESI notified Ms. Kinchen and Ms. Bradstreet that it was resigning as the Administrator for the Agreement at the request of Ms. Kinchen. On March 19, 2007, Ms. Bradstreet’s attorney advised Ms. Kinchen and ESI, by certified letter, of “defects” he claimed infected the Agreement and demanded compensation for Ms. Bradstreet’s damages. The letter read, in pertinent part:
 

 
 *335
 
 It appears that there are numerous defects in the preparation, execution and recording of [the Agreement] and the administration of the transaction thereafter, which call into question its legal efficacy. Since [the Agreement] fulfills the definition of a bond for deed under Louisiana law, La. R.S. 9:2941, it is legally defective, including but not limited to the following reasons:
 

 1. it was not registered in conveyance records of Orleans Parish, La. R.S. 9:2945; and/or
 

 2. EscroServ, Inc. was not a licensed escrow agent at the time of the execution of [the Agreement] or since that time as required by La. R.S. 6:414(B) ... and/or
 

 3. there is no filing of the written guaranty of the mortgage holder required by La. R.S. 9:2942 in the mortgage record of Orleans Parish; and/or
 

 4. [the Agreement] did not disclose that the mortgage had an adjustable rate; and/or
 

 5. [the Agreement] did not disclose the true mortgagee but only disclosed the apparent servicing agent ... and/or
 

 156. there exists the possibility that there were outstanding real estate tax obligations which had been paid by the mortgagee and/or the servicing company at the time of the closing which had not been paid by Ms. Kinchen, which would impact the purchase price, just as does the adjustable rate interest provision ... and/or
 

 7.notwithstanding [ESI’s] undertaking of the obligations of the Administrator under [the Agreement], Ms. Bradstreet has not been provided a copy of any assignment of the rights of Escro-Serv, Inc. to [ESI] nor has there been any release of EscroServ, Inc. of its obligations under [the Agreement]; and/or
 

 8. [the Agreement] provides no basis for the resignation and/or discharge of the Administrator, therefore, no resignation or discharge appears possible without the consent of all parties; and/or
 

 9. [Crescent City Title] through [its attorney] and/or [its attorney], failed to disclose the aforesaid defects in [the Agreement] and/or failed to properly obtain the requisite documentation and/or failed to properly record the necessary documentation to make the transaction lawful and/or failed to properly account for the transaction on the HUD closing statement involved.
 

 Having received no response to the letter, Ms. Bradstreet filed a petition for damages, naming as defendants Ms. Kin-chen; EscroServ, Inc.; ESI; Crescent City Title; the attorney who handled the transaction; and Commonwealth Land Title Insurance Company, the title insurer. She alleged numerous causes of action, including rescission of contract, breach of contract, and negligence in failing to disclose material information and in failing to comply with state law.
 

 ESI filed dilatory exceptions of prematurity and vagueness of the petition and a peremptory exception of no cause of action, invoking the Agreement’s arbitration clause. The trial court maintained the exception of prematurity and ordered the parties to submit the matter to arbitration. Ms. Bradstreet appealed.
 

 | (-/DISCUSSION
 

 In the first of two assignments of error, Mrs. Bradstreet contends that the trial court erred in maintaining the exception of prematurity, as ESI presented no evidence that the Agreement was a valid contract. Specifically, she contends that, notwithstanding the Agreement was entitled “Installment Option,” it was actually a “bond
 
 *336
 
 for deed” contract, as defined in La. R.S. 9:2941, and the defendants’ failure to comply with La. R.S. 9:2942, 9:2943 and 6:414(B) rendered the contract invalid.
 
 [7]
 

 The Louisiana Civil Code provides that the interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. “Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.” La. C.C. art. 2050. “When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.” La. C.C. art. 2046. Considering the written contract executed by the parties, we find no merit to Ms. Bradstreet’s claim that the Agreement was not an option but rather a bond for deed contract pursuant to Louisiana law.
 

 La. C.C. art. 2620 defines an option as:
 

 |7An option to buy, or an option to sell, is a contract whereby, a party gives to another the right to accept an offer to sell, or to buy, a thing within a stipulated time.
 

 An option must set forth the thing and the price, and meet the formal requirements of the sale it contemplates.
 

 The Agreement at issue specifically identifies the thing to be sold and the sale price. Characterizing the Agreement as an option contract is consistent with the language providing that it is not a sale, but only “a written agreement to sell, transfer, and convey property in the future,” as clearly stated in paragraph 2 of the Agreement, as well as its description as “an option” in paragraphs 4 and 5.
 

 Furthermore, unlike an option, a bond for deed absolutely obligates the seller to deliver title to the buyer after payment of a specific sum.
 
 See Upton v. Whitehead,
 
 41,131 (La.App. 2 Cir. 6/28/06), 935 So.2d 746, 751;
 
 see also Gray v. James,
 
 503 So.2d 598 (La.App. 4 Cir. 2/12/87). In this case, Ms. Kinchen was not automatically obligated to transfer title to the property after the required payments. In fact, Condition 4 of the contract, stated:
 

 Purchaser shall have the right to acquire ownership of Property during the term of the Agreement. Should Purchaser comply with all obligations herein, such compliance shall constitute election to
 
 *337
 
 exercise this option and Owner may require Purchaser to take title within thirty (30) days of written notice to Purchaser. Failure of Purchaser to do so shall cause option to lapse without further obligation to transfer property. Purchaser may also cancel this option by giving thirty (30) days notice to the Administrator.
 

 (Emphasis added). Because there is no automatic transfer of title, but only an option to be exercised, the Agreement is clearly an option contract as opposed to a bond for deed contract.
 

 ^Alternatively, Ms. Bradstreet argues that if the Agreement is an option, then the trial court erred in allowing ESI to enforce its provisions, ie., the arbitration clause, because ESI was not a party to the Agreement. We disagree.
 

 As previously mentioned, paragraph 26 of the Agreement specified that the transfer and the other terms and conditions of the contract were to be administered by an administrator, and the “administrator [could] assign the servicing to any person, firm or corporation.” The record indicates that the parties to the agreement initially appointed EseroServ Inc. as the initial administrator, and EseroServ, Inc. assigned the servicing of the Agreement to ESI. Ms. Bradstreet does not dispute that she continued to make payments to ESI as the Administrator, as called for by the Agreement. Thus, by her own conduct, Ms. Bradstreet acknowledged that ESI was properly serving as the Administrator. Moreover, the exhibits documenting the Agreement after the closing clearly refer to ESI as the Administrator.
 

 Ms. Bradstreet also asserts that the option contract is invalid because the mandate given by Ms. Kinchen to Mr. Julien to act as her agent and sign the agreement on her behalf was signed six days after the signing of the Agreement. Again, we disagree.
 

 The authority to alienate, acquire, encumber or lease immovable property must be given expressly. La. C.C. art. 2996. Furthermore, “when the law prescribes a certain form for an act, a mandate authorizing the act must be in that form.” La. C.C. art. 2993. “A promise to sell immovable property must be vested with the same formalities as prescribed for sales of immovable property.”
 
 See Alley v. New Homes Promotion, Inc.,
 
 247 So.2d 218 (La.App. 4th Cir.1971). “A sale or promise of sale of an immovable must be made by authentic act or by act under private signature-” La. C.C. art. 2440.
 

 ^Furthermore, La. C.C. art. 2031 provides, in part, “A contract is relatively null when it violates a rule intended for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made. A contract that is only relatively null may be confirmed.” Although Mr. Julien lacked the requisite authority to act as Ms. Kinchen’s agent when he signed the option agreement on July 5, 2005, because the mandate was not in effect, Ms. Kinchen ratified the Agreement once she executed the mandate on July 11, 2005. If Ms. Bradstreet wanted to challenge the validity of the Agreement for want of the required mandate, she should have done so prior to July 11, 2005. This argument is without merit.
 

 In her second assignment of error, Ms. Bradstreet argues that the trial court erred in enforcing the arbitration clause because the clause was adhesionary. She emphasizes that the arbitration clause in this ease was a minor clause in a standard pre-printed form used by the mortgage industry, which was supplied by Escro-Serv, Inc. and prepared by Crescent City Title.
 

 
 *338
 
 The Louisiana Supreme Court, considering whether an arbitration provision similar to the one at issue here was a contract of adhesion, stated:
 

 “Broadly defined, a contract of adhesion is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party. Often small print, these contracts sometimes raise a question as to whether or not the weaker party actually consented to the terms. See LSA-C.C. Aids. 1766, 1811; S. Litvinoff, 6 Louisiana Civil Law Treatise-Obligations (Book 1), § 194, pp. 346-349 (1969).”
 
 Golz v. Children’s Bureau of New Orleans,
 
 326 So.2d 865, 869 (La.1976), appeal dismissed, 426 U.S. 901, 96 S.Ct. 2220, 48 L.Ed.2d 827 (1976).
 

 Aguillard v. Auction Management Corp.,
 
 2004-2804, p. 9 (La.6/29/05), 908 So.2d 1, 8-9.
 
 Aguillard
 
 involved the sale of real estate at a public auction. Prior to bidding on the property, all potential buyers, including Mr. Aguillard, were compelled to sign a document entitled, “Auction Terms & Conditions,” which included the following arbitration clause: “Any controversy or claim arising from or relating to this agreement ... shall be settled by arbitration.”
 
 Id.
 
 at 3, 908 So.2d at 4. When a dispute arose over Mr. Aguillard’s bid, he filed suit. The defendants filed a motion to stay the proceedings pending arbitration, contending the arbitration clause contained in the Auction Terms & Conditions document governed the dispute. The trial court denied the stay, finding the arbitration clause was adhe-sionary. The court of appeal affirmed. The Supreme Court reversed, holding that the arbitration clause, even if it was a minor sentence in a section of a preprinted form, was not a contract of adhesion.
 
 Id.
 
 at 12, 908 So.2d 11. The Court acknowledged that “the real issue in a contract of adhesion analysis is not the standard form of the contract, but rather whether a party truly consented to all the printed terms.”
 
 Id.
 
 at 12,
 
 908
 
 So.2d at 10,
 
 citing
 
 Litvinoff,
 
 supra,
 
 at 758. “[I]f [the standard form contract] does not call into question the non-drafting party’s consent and if it is not demonstrated that the non-drafting party did not consent or his consent is vitiated by error, the contract is not a contract of adhesion.”
 
 Id.
 
 at 12, 908 So.2d at 11.
 

 In this case, the arbitration clause consisted of a full paragraph under the section of the pre-printed form bearing the heading “BINDING ARBITRATION.” The clause is legible and unambiguous. Ms. Bradstreet does not dispute that she signed the Agreement and, in compliance therewith, made payments for more than |na year before defaulting. Thus, no doubt exists as to whether she consented to its terms, including the arbitration clause.
 

 Furthermore, addressing the determination of the enforceability of arbitration agreements under a contract of adhesion analysis, the Louisiana Supreme Court held that a presumption of arbitrability does exist. The Court stated:
 

 Due to the strong and substantial similarities between our state arbitration provisions and the federal arbitration law as seen through a comparison of La.Rev.Stat. §§ 9:4201 and 9:4202 and 9 U.S.C. §§ 2 and 3, the federal jurisprudence provides guidance in the interpretation of our provisions. We, therefore, adopt the United States Supreme Court’s interpretation of the federal arbitration law.
 

 Accordingly, even when the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration. The weight of this
 
 *339
 
 presumption is heavy and arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue. Therefore, even if some legitimate doubt could be hypothesized, this Court, in conjunction with the Supreme Court, requires resolution of the doubt in favor of arbitration.
 

 Aguillard,
 
 2004-2804, p. 24-25, 908 So.2d at 18.
 

 Considering the Supreme Court’s liberal policy favoring arbitration and the foregoing conclusion that the Agreement entered into by Ms. Bradstreet and Ms. Kinchen constituted an option contract with a provision requiring arbitration in the event disputes arose among the parties and/or administrator, we find the trial court correctly sustained the exception of prematurity and ordered the matter to be submitted to arbitration.
 

 112DECREE
 

 Accordingly, for the aforementioned reasons, the judgment of the trial court is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . The trial court designated the October 26, 2007 judgment as a final appealable judgment on November 27, 2007.
 

 [2]
 

 . As further discussed
 
 infra,
 
 EscroServ, Inc. and ESI were separate and distinct entities. EscroServ, Inc. was the initial administrator of the Agreement at issue and pursuant thereto later assigned servicing of the Agreement to ESI. At the time Ms. Bradstreet defaulted on her obligation under the Agreement, ESI was serving as the administrator.
 

 [3]
 

 .EscroServ, Inc. and ESI were affiliated companies at the time the parties executed the Agreement. On May 1, 2006, ESI was
 
 *334
 
 purchased by an entity separate from Escro-Serv, Inc. However, shortly before that date, EscroServ, Inc. had assigned the servicing of the Agreement to ESI.
 

 [4]
 

 .Schedule A of the Agreement listed the "Contract Price" as $151,500.00 and deducted $8,885.43, the initial down payment made by Ms. Bradstreet, leaving a "Balance Due" of $142,614.57. It listed the "Interest Rate" as 9.500 percent, per annum on the unpaid balance and the "Initial Monthly Payment” as $1,292.99. It further provided, "[t]he 'Payment Due Date' was July 15, 2005, and on the same day of each succeeding month until the ‘Final Payment Date' of July 15, 2006, by which the outstanding Balance Due must be paid in full.”
 

 [5]
 

 . The $1,292.99 payment included the principal and interest ($1,215.64), insurance ($52.35) and the Administrator's fee ($25.00).
 

 [6]
 

 . From July 15, 2005 to September 15, 2006, the interest rate on the underlying mortgage rose from 9.500% to 11.375% per annum.
 

 [7]
 

 . La. R.S. 9:2941 provides, "[a] bond for deed is a contract to sell real property, in which the purchase price is to be paid by the buyer to the seller in installments and in which the seller after payment of a stipulated sum agrees to deliver title to the buyer.” La. R.S. 9:2942 provides that it is unlawful for the vendor to sell, by bond for deed, immovable property encumbered by a mortgage or privilege without first obtaining from the mortgagee or privilege holder a written guarantee to release the property upon payment by tire buyer of a stipulated mortgage release price. The statute also provides that the written guarantee shall be recorded in the mortgage records of the parish where the property is situated before any part of the property is offered for sale under a bond for deed contract. Furthermore, La. R.S. 9:2943 provides that all payments toward the purchase of property burdened by a mortgage or privilege under bond for deed contracts shall be made to a bank which has been designated as an escrow agent by the parties. And, La. R.S. 6:414(B) requires a bond for deed escrow agent to be licensed.
 

 Ms. Bradstreet submitted to the trial court documentary proof that the mortgage holder in this case failed to record in the mortgage office of Orleans Parish a written guarantee to release the property upon payment. She also submitted evidence from the Louisiana Office of Financial Institutions that indicated Escro-Serv, Inc. was not a licensed bond for deed escrow agent. Because ESI offered no evidence to the contrary, Ms. Bradstreet argues the bond for deed contract executed by the parties was not valid.