# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #057

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **19th day of October, 2016**, are as follows:

**BY JOHNSON, C.J.**:

2016-CC-0818    JAMES DUHON v. ACTIVELAF, LLC, D/B/A SKYZONE LAFAYETTE AND UNDERWRITERS AT LLOYDS, LONDON (Parish of E. Baton Rouge)

Accordingly, we find the court of appeal erred in reversing the district court's ruling on Sky Zone's exception of prematurity. Therefore, the ruling of the court of appeal is reversed, and the ruling of the district court is reinstated.
REVERSED AND REMANDED TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS.

WEIMER, J., dissents and assigns reasons.
GUIDRY, J., dissents and assigns reasons.
CLARK, J., concurs with reasons.
HUGHES, J., concurs with reasons.
CRICHTON, J., additionally concurs and assigns reasons.

SUPREME COURT OF LOUISIANA

No. 2016-CC-0818

JAMES DUHON

VERSUS

ACTIVELAF, LLC, D/B/A SKYZONE LAFAYETTE AND

UNDERWRITERS AT LLOYDS, LONDON

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF EAST BATON ROUGE

**JOHNSON, CHIEF JUSTICE**

Patrons of Sky Zone Lafayette, an indoor trampoline park, are required to complete a "Participant Agreement, Release and Assumption of Risk" document ("Agreement") prior to entering the facility. The Agreement contains a clause waiving the participant's right to trial and compelling arbitration. Plaintiff, James Duhon, was a patron at Sky Zone and was injured in the course of participating in the park's activities. After Mr. Duhon filed suit seeking damages, Sky Zone filed an exception of prematurity seeking to compel arbitration pursuant to the Agreement. The district court overruled Sky Zone's exception, but the court of appeal reversed, finding the arbitration provision should be enforced.

For the following reasons, we reverse the ruling of the court of appeal, holding the arbitration clause in the Sky Zone agreement is adhesionary and therefore unenforceable.

**FACTS AND PROCEDURAL HISTORY**

On April 19, 2015, James Duhon, accompanied by three minors, went to Sky Zone in Lafayette. Upon entering the facility, Mr. Duhon was directed by Sky Zone staff to a computer screen to check himself and the minors into the facility. Check-in

1

required all participants to complete a Participation Agreement which requested names and dates of birth for all participants, required participants to check three boxes next to certain terms of the Agreement, and required participants to digitally sign the Agreement.

The Agreement provided that in consideration for gaining access to Sky Zone Lafayette and engaging in the services, patrons agreed:

☐ I acknowledge that my participation in [Sky Zone] trampoline games or activities entails known and unanticipated risks that could result in physical or emotional injury including, but not limited to broken bones, sprained or torn ligaments, paralysis, death, or other bodily injury or property damage to myself my children, or to third parties. I understand that such risks simply cannot be eliminated without jeopardizing the essential qualities of the activity. I expressly agree and promise to accept and assume all of the risks existing in this activity. My and/or my children's participation in this activity is purely voluntary and I elect to participate, or allow my children to participate in spite of the risks. If I and/or my children are injured, I acknowledge that I or my children may require medical assistance, which I acknowledge will be at my own expense or the expense of my personal insurers. I hereby represent and affirm that I have adequate and appropriate insurance to provide coverage for such medical expense.

☐ In consideration for allowing me and the minor child(ren) identified herein to participate in the [Sky Zone] activities and use the [Sky Zone] facility, I expressly and voluntarily agree to forever release, acquit, indemnify and discharge [Sky Zone] and agree to hold [Sky Zone] harmless on behalf of myself, my spouse, my children, my parents, my guardians, and my heirs, assigns, personal representative and estate, and any and all other persons and entities who could in any way represent me, or the minor children identified herein or act on our respective halves, from any and all actions or omissions, cause and causes of action, suits, debts, damages, judgments, costs, including, but not limited to attorney's fees, and claims and demands whatsoever, in law or in equity, for any personal injury, death, or property damages that I and/or the minor children's use of [Sky Zone] activities, [Sky Zone] premises or at offsite and camp activities related to [Sky Zone]. This waiver is intended to be a complete release of any and all responsibility or duties owed by [Sky Zone] as indemnitees for personal injuries, death and/or property loss/damage sustained by myself or any minor children identified herein while on the [Sky Zone] premises, or with respect to [Sky Zone] activities, whether using [Sky Zone] equipment or not, even if such injury or damage results from [Sky Zone] negligence, [Sky Zone] employee

2

negligence, improper supervision, improper maintenance of [Sky Zone] equipment or premises or negligence by other [Sky Zone] guests.

☐ I certify that I and/or my child(ren) are physically able to participate in all activities at the Location without aid or assistance. I further certify that I am willing to assume the risk of any medical or physical condition that I and/or my child(ren) may have. I acknowledge that I have read the rules, (the "Sky Zone Rules") governing my and/or my child(ren)'s participation in any activities at the Location. I certify that I have explained the [Sky Zone] Rules to the child(ren) identified herein. I understand that the [Sky Zone] Rules have been implemented for the safety of all guests at the Location. I agree that if any portion of this Agreement is found to be void and unenforceable, the remaining portions shall remain in full force and effect. If there are any disputes regarding this agreement, I on behalf of myself and/or my child(ren) hereby waive any right I and/or my child(ren) may have to a trial and agree that such dispute shall be brought within one year of the date of this Agreement and will be determined by binding arbitration before one arbitrator to be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures. I further agree that the arbitration will take place solely in the state of Louisiana and that the substantive law of Louisiana shall apply. If, despite the representations made in this agreement, I or anyone on behalf of myself and/or my child(ren) file or otherwise initiate a lawsuit against [Sky Zone], in addition to my agreement to defend and indemnify [Sky Zone], I agree to pay within 60 days liquidated damages in the amount of $5,000 to [Sky Zone]. Should I fail to pay this liquidated damages amount within the 60 day time period provided by this Agreement, I further agree to pay interest on the $5,000 amount calculated at 12% per annum.

I further grant [Sky Zone] the right, without reservation or limitation, to videotape, and/or record me and/or my children on closed circuit television.

I further grant [Sky Zone] the right, without reservation or limitation, to photograph, videotape, and/or record me and/or my children and to use my or my children's name, face, likeness, voice and appearance in connection with exhibitions, publicity, advertising and promotional materials.

I would like to receive free email promotions and discounts to the email address provided below. I may unsubscribe from emails from Sky Zone at any time.

By signing this document, I acknowledge that if anyone is hurt or property is damaged during my participation in this activity, I may be found by a court of law to have waived my right to maintain a lawsuit

against [Sky Zone] on the basis of any claim from which I have released them herein. I have had sufficient opportunity to read this entire document. I understand this Agreement and I voluntarily agree to be bound by its terms.

I further certify that I am the parent or legal guardian of the children listed above on this Agreement or that I have been granted power of attorney to sign this Agreement on behalf of the parent or legal guardian of the children listed above.

Mr. Duhon electronically completed the Agreement on behalf of himself and the minors by checking the three boxes provided in the agreement, furnishing the relevant personal identifying information, and clicking on an "accept" button. Mr. Duhon and the minors then entered the facility.

Mr. Duhon asserts he was injured at the facility due to Sky Zone's negligence. On August 12, 2015, Mr. Duhon filed suit against Activelaf, L.L.C., d/b/a Sky Zone Lafayette and its insurer ("Sky Zone"). In response, Sky Zone filed several exceptions, including an exception of prematurity. Sky Zone alleged that the Agreement contained a mandatory arbitration clause, thereby rendering Mr. Duhon's suit premature. Mr. Duhon asserted he did not knowingly consent to arbitration, and argued the Agreement was adhesionary and ambiguous.

Following a hearing, the district court determined there was a lack of mutuality in the Agreement relative to the arbitration clause because only Mr. Duhon was bound to arbitrate claims. Thus, relying on this court's decision in *Aguillard Auction Management Corp.,* 04-2804 (La. 6/29/05), 908 So. 2d 1 and the Third Circuit's opinion in *Sutton Steel & Supply, Inc. v. Bellsouth Mobility, Inc*., 07-146 (La. App. 3 Cir. 12/12/07), 971 So. 2d 1257, the district court refused to enforce the arbitration agreement and overruled Sky Zone's exception of prematurity.

The court of appeal granted Sky Zone's writ and reversed the district court's ruling:

There is a strong presumption favoring the enforceability of arbitration

4

clauses. The weight of this presumption is heavy and arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue. *Aguillard v. Auction Management Corp.*, 2004-2804 (La. 6/29/05), 908 So. 2d 1. We find that plaintiff failed to establish that this arbitration provision is adhesionary, and accordingly, the arbitration provision should be enforced.

Judge Theriot dissented without reasons, stating he would deny the writ application.

*Duhon v. ActiveLaf, LLC*, 16-0167 (La. App. 1 Cir. 4/5/16) (unpublished).

On Mr. Duhon's application, we granted certiorari to review the correctness of the court of appeal's ruling. *Duhon v. ActiveLaf, LLC*, 16-0818 (La. 6/17/16), 192 So. 3d 762.

## DISCUSSION

This case involves the legal questions of whether the court of appeal erred in its "contract of adhesion" analysis of the arbitration clause in the Agreement, and whether the arbitration clause is unenforceable on general contract principles of consent or adhesion. Thus, we review the matter *de novo*. *See Aguillard*, 908 So. 2d at 3; *Prasad v. Bullard*, 10-291 (La. App. 5 Cir. 10/12/10), 51 So. 3d 35, 39; *Horseshoe Entertainment v. Lepinski*, 40,753 (La. App. 2 Cir. 3/8/06), 923 So. 2d 929, 934, *writ denied*, 06–792 (La. 6/2/06), 929 So. 2d 1259.

Louisiana and federal law explicitly favor the enforcement of arbitration clauses in written contracts. *Aguillard*, 908 So. 2d at 7. Louisiana Binding Arbitration Law ("LBAL") is set forth in La. R.S. 9:4201 *et seq.* and expresses a strong legislative policy favoring arbitration. La. R.S. 9:4201 provides:

> A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

As this court recognized in *Aguillard*, "[s]uch favorable treatment echos the Federal

Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*" 908 So. 2d at 7. We noted the LBAL is virtually identical to the FAA, and determinations regarding the viability and scope of arbitration clauses are the same under either law, thus federal jurisprudence interpreting the FAA may be considered in construing the LBAL. *Id*. at 18. Further, to the extent that federal and state law differ, the FAA preempts state law as to any written arbitration agreement in a contract involving interstate commerce. *Hodges v. Reasonover*, 12-0043 (La. 7/2/12), 103 So. 3d 1069, 1072; *FIA Card Services, N.A. v. Weaver*, 10-1372 (La. 3/15/11), 62 So. 3d 709, 712; *Collins v. Prudential Ins. Co. of America*, 99-1423 (La. 1/19/00), 752 So. 2d 825, 827.

The FAA makes arbitration agreements "valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contact*." 9 U.S.C. §2 (emphasis added). The United States Supreme Court has explained that this provision reflects both a "liberal federal policy favoring arbitration," and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740, 1745, 179 L.Ed. 2d 742 (2011) (citing *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed. 2d 765 (1983) and *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 67, 130 S.Ct. 2772, 2776, 177 L.Ed. 2d 403 (2010)). The Supreme Court has instructed that in line with these principles, courts must place arbitration agreements on an equal footing with other contracts. *Concepcion*, 563 U.S. at 339 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed. 2d 1038 (2006)). Despite this policy favoring enforcement of arbitration agreements, the Supreme Court has also recognized that, under the savings clause in §2, general state contract principles still apply to assess whether those agreements to arbitrate are valid and enforceable, just as they would to any other contract dispute arising under state law. *Doctor's*

*Associates, Inc. v. Casarotto*, 517 U.S. 681, 686–87, 116 S.Ct. 1652, 1656, 134 L. Ed. 2d 902 (1996). Accordingly, ordinary state-law principles that govern the formation of contracts are applied when deciding whether the parties agreed to arbitration. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed. 2d 985 (1995). Importantly, the savings clause in § 2 does not permit courts to invalidate an arbitration agreement under a state law applicable *only* to arbitration provisions. *Concepcion*, 563 U.S. at 339; *Aguillard*, 908 So. 2d at 8.

With these principles in mind, we consider whether the arbitration clause in the Sky Zone Agreement should be invalided under Louisiana law. As an initial matter, we note the electronic nature of the Agreement in this case is of no legal consequence and does not fundamentally change the principles of contract. Louisiana law gives legal effect to both electronic contracts and signatures. *See* La. R.S. 9:2607. We interpret and analyze the terms of the Agreement using the same rules that we would apply to oral and written contracts.

*Aguillard* is the seminal case from this court addressing the validity of an arbitration agreement in a standard form contract. In *Aguillard*, the winning bidder at a real estate auction brought suit to enforce the auction sales agreement. This court, pursuant to its authority under La. R.S. 9:4201 and 9 U.S.C. § 2, applied a "contract of adhesion" analysis to determine the enforceability and validity of an arbitration agreement in the auction contract. In discussing the "contract of adhesion" doctrine, we explained: "Broadly defined, a contract of adhesion is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party. Often in small print, these contracts sometimes raise a question as to whether or not the weaker party actually consented to the terms." 908 So. 2d at 10. This court further stated that "although a contract of adhesion is a contract executed in a standard form in the vast majority of instances, not every

7

contract in standard form may be regarded as a contract of adhesion. Therefore, we are not willing to declare all standard form contracts adhesionary; rather, we find standard form serves merely as a possible indicator of adhesion." *Id*. (Internal citations removed). We made clear that the "real issue in a contract of adhesion analysis is not the standard form of the contract, but rather whether a party truly consented to all the printed terms. Thus, the issue is one of consent." *Id*. (Internal citations removed). The court explained:

> Consent is called into question by the standard form, small print, and most especially the disadvantageous position of the accepting party, which is further emphasized by the potentially unequal bargaining positions of the parties. An unequal bargaining position is evident when the contract unduly burdens one party in comparison to the burdens imposed upon the drafting party and the advantages allowed to that party. Once consent is called into question, the party seeking to invalidate the contract as adhesionary must then demonstrate the non-drafting party either did not consent to the terms in dispute or his consent was vitiated by error, which in turn, renders the contract or provision unenforceable.

> In summation, a contract is one of adhesion when either its form, print, or unequal terms call into question the consent of the non-drafting party and it is demonstrated that the contract is unenforceable, due to lack of consent or error, which vitiates consent. Accordingly, even if a contract is standard in form and printed in small font, if it does not call into question the non-drafting party's consent and if it is not demonstrated that the non-drafting party did not consent or his consent is vitiated by error, the contract is not a contract of adhesion.

*Id*. at 10-11. Thus, the question we consider is whether Mr. Duhon truly consented to the arbitration provision in the Agreement.

In concluding the arbitration provision in *Aguillard* was *not* adhesionary, we noted (1) the arbitration provision was contained in a short, two-page document and was contained in a single sentence paragraph; (2) the arbitration provision was not concealed; (3) the contract did not lack mutuality because defendants did not reserve their right to litigate issues arising from the contract; and (4) the parties did not have a significant difference in bargaining power because a real estate auction is not a

necessary transaction that plaintiff was compelled to enter. *Id*. Thus, while not declaring a definitive test, this court effectively established a framework for examining the validity of an arbitration clause within a standard form contract by generally describing the characteristics of an unenforceable adhesionary agreement. Finding our analysis in *Aguillard* instructive, we consider the following factors to determine the enforceability of the arbitration clause in the Sky Zone Agreement: (1) the physical characteristics of the arbitration clause, (2) the distinguishing features of the arbitration clause, (3) the mutuality of the arbitration clause, and (4) the relative bargaining strength of the parties. After our review of the Agreement in light of the above factors, we hold the arbitration clause is adhesionary and not enforceable because of its placement in the Agreement and its lack of mutuality.

Examining the physical characteristics of the arbitration clause, we observe the arbitration language is consistent in size and font with the other provisions in the Agreement. However, the lack of distinguishing features and the specific placement of the arbitration clause serve to conceal the arbitration language from Sky Zone patrons. The Agreement is structured with check boxes next to the first three paragraphs, followed by five additional paragraphs without corresponding check boxes. The first check box is placed next to a single, six-sentence paragraph generally discussing participants' risks of injuries and assumption of those risks. The second check box is placed next to a single paragraph containing two long sentences purporting to release Sky Zone from any liability. The third check box is placed next to one long paragraph discussing multiple topics. Specifically, the arbitration language is located starting in the eleventh line of this third paragraph, following provisions regarding patrons' physical ability to participate in the activities, assumption of the risks, certification that Sky Zone's rules have been explained to any children, and expressing agreement to follow those rules.

In *Aguillard*, we noted "the arbitration provision, although not distinguished, was not concealed in any way, but rather was contained in a single sentence paragraph separated from the preceding and following paragraphs by double spacing." 908 So. 2d at 16. Sky Zone argues the paragraph containing the arbitration clause was sufficiently distinguished and brought to patrons' attention through the use of the check box feature. We disagree. Although patrons are required to check a box adjacent to the top of the third paragraph, significantly no check box was placed next to the arbitration language. In contrast, the other two check boxes in the Agreement were placed next to paragraphs limited to one subject matter. The Agreement also contains five additional paragraphs following the third paragraph that do not include corresponding check boxes. Each of these are short one-topic paragraphs addressing such items as Sky Zone's right to videotape and record patrons and to use recordings for promotional materials. Thus, looking at the Agreement as a whole, the arbitration language appears to be the only specific provision not relegated to a separate paragraph or set apart in some explicit way. Here, the two-sentence provision mandating arbitration is camouflaged within the confines of an eleven sentence paragraph, nine of which do not discuss arbitration. The effect of the placement of the arbitration language is to cloak it within a blanket of boilerplate language regarding rules and risks of participating in the Sky Zone activities. Thus, although it is undisputed that Mr. Duhon electronically signed the Agreement, purportedly demonstrating an acceptance of its terms, under Louisiana contract law, we find Mr. Duhon did not truly consent to the arbitration provision.

Additionally, the lack of mutuality in the arbitration clause fortifies our finding that it is adhesionary. The arbitration provision requires only Sky Zone patrons to submit their claims to arbitration. The entire contract, including the arbitration clause, repeatedly includes "I acknowledge" and "I agree" language, with the "I" referencing

the "applicant" – here, Mr. Duhon. Specifically, the Agreement provides if there are any disputes regarding this agreement "I … hereby waive any right … to a trial and agree that such dispute shall be … determined by binding arbitration …." Although Sky Zone does not expressly reserve itself the right to pursue litigation, nowhere in the Agreement are "the parties" or Sky Zone particularly bound to arbitration. This is in stark contrast to the arbitration clause in *Aguillard* which clearly applied to both parties by providing: "Any controversy or claim arising from or relating to this agreement or any breach of such agreement shall be settled by arbitration administered by the American Arbitration Association under is [sic] rules, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof." 908 So. 2d at 4. Thus, in *Aguillard*, we found the arbitration clause did not lack sufficient mutuality to invalidate the clause as adhesionary because the arbitration clause severely limited both the defendants' and the plaintiff's right to litigate, and the defendants did not reserve their right to litigate in the document. *Id*. at 16. Even more troublesome in this case is the punitive provision compelling patrons to pay Sky Zone liquidated damages of $5,000 within sixty days should the patron file suit, with legal interest added at 12% per year. Sky Zone has no mutual obligation in the Agreement.

The party seeking to enforce an arbitration provision has the burden of showing the existence of a valid contract to arbitrate. *FIA Card Services*, 62 So. 3d at 719. Sky Zone has failed to meet this burden. Considering the lack of mutuality together with the obscure placement of the arbitration language in the Agreement, and in comparison to the contract in *Aguillard*, we are compelled to find the arbitration clause in the Sky Zone Agreement is adhesionary and unenforceable.

In finding this arbitration clause invalid, we have carefully considered the Supreme Court's admonition that, under the doctrine of preemption, state courts

cannot adopt defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue. *See, e.g., Concepcion*, 563 U.S. at 339; *Casarotto*, 517 U.S. at 687. Nor can we apply state law rules that stand as an obstacle to the accomplishment of the FAA's objectives. *Concepcion*, 563 U.S. at 343. We are mindful that setting forth a legal requirement relative to a particular form or method of distinguishing or highlighting arbitration clauses, or requiring term-for-term mutuality in an arbitration clause could risk running afoul of the FAA. However, the Supreme Court has made it clear that state courts may apply standard state law contract defenses to arbitration agreements. *Id.* at 339. Our application of Louisiana contract law to invalidate the arbitration provision in the instant case is consistent with § 2 of the FAA, and we find no conflict between our holding today and Supreme Court decisions discussing preemption.

As explained earlier, consideration of enforceability of contracts of adhesion is an issue of consent, and determining whether a party truly consented to the contract terms. Consideration of consent is not limited to arbitration clauses; we consider the issue of consent in any contract. Lack of consent is a generally applicable contract defense. *See* La. C.C. art. 1927. The factors discussed in *Aguillard* simply provided a template for considering consent to an arbitration clause contained in a standard contract. *Aguillard* did not create a *per se* rule that any degree of non-mutuality in an arbitration agreement renders it unenforceable, nor did *Aguillard* prescribe a definitive rule that arbitration agreements must be delineated a particular way to be enforceable. Considering the *Aguillard* analysis in its entirety, it is clear we viewed the arbitration provision in the context of the overall contract and the surrounding circumstances, and our determination was based on weighing several factors. Were we not to consider factors relative to consent when examining the validity of an arbitration agreement, we would be operating in contravention to the mandate of the Supreme Court by

12

treating arbitration agreements differently from other contracts. Thus, we find our application of Louisiana contract law to invalidate the arbitration provision in this case is consistent with the savings clauses in § 2 of the FAA and La. R.S. 9:4201.

## CONCLUSION

The determination of whether an arbitration clause in a standard form contract is adhesionary is necessarily made on a case by case basis. Based on the facts of this case, the concealment of the arbitration clause and the lack of mutuality compels us to find the arbitration clause in the Sky Zone Agreement is adhesionary and unenforceable. Accordingly, we find the court of appeal erred in reversing the district court's ruling on Sky Zone's exception of prematurity.[1] Therefore, the ruling of the court of appeal is reversed, and the ruling of the district court is reinstated.

## DECREE

**REVERSED AND REMANDED TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS.**

---

[1] Because we hold the arbitration clause is adhesionary and unenforceable based on consideration of the factors set forth in *Aguillard*, we pretermit discussion of Mr. Duhon's additional arguments relative to ambiguity of the Agreement or whether the scope of the arbitration clause covers personal injury.

13

10/19/16

# SUPREMECOURT OF LOUISIANA

### NO. 2016-CC-0818

### JAMES DUHON

### VERSUS

### ACTIVELAF, LLC, D/B/A SKYZONE LAFAYETTE

### AND UNDERWRITERS AT LLOYDS, LONDON

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST CIRCUIT, PARISH OF EAST BATON ROUGE*

**WEIMER, J.**, dissenting.

I agree with the majority's assessment that the factors outlined in **Aguillard v. Auction Management Corp.**, 04-2804 (La. 6/29/05), 908 So.2d 1, are an appropriate starting point for analyzing the issue presented in this matter.[1]  See **Duhon v. ActiveLaf, LLC**, 16-0818, slip op. at 7 (La. 10/__/16).  However, I respectfully disagree with the majority's conclusion that analysis of the Sky Zone Agreement using **Aguillard**'s four-factor "framework" supports a finding that the arbitration clause is adhesionary and not enforceable.  To the contrary, I find the arbitration clause to be valid and enforceable.  I also find that analysis of the clause using **Aguillard**'s factors, viewed in light of the strong and, as **Aguillard** describes it, "heavy" presumption in favor of arbitration, dictates that finding of enforceability.  **Aguillard**, 04-2804 at 25, 908 So.2d at 18.

As the majority recognizes, a contract of adhesion is broadly defined as "a standard contract, usually in printed form, [often in small print,] prepared by a party

---

[1] While I dissented in **Aguillard**, I did so solely on grounds that there was a threshold legal question that I believed needed to be resolved before reaching the issue of the enforceability of the arbitration clause: whether the arbitration clause at issue even applied in light of the fact that the Auction Agreement for the Purchase and Sale of Real Estate had been completed.  **Aguillard**, 04-2804 at 1, 980 So.2d at 20-21 (Weimer, J., dissenting.).

*of superior bargaining power* for adherence or rejection of the weaker party." **Duhon**, 16-0818, slip op. at 7-8 (quoting **Aguillard**, 04-2804 at 9, 908 So.2d at 8-9.) (Emphasis added.) Pursuant to this definition, a predicate factor to consider in determining whether a contract is adhesionary is the existence of unequal bargaining power. Indeed, this is one of the four factors delineated in the **Aguillard** analysis. Yet, the majority opinion does not mention, much less weigh, this factor in conducting its analysis–this, despite the fact that there must be unequal bargaining power for the contract to meet the definitional hurdle of a contract of adhesion in the first instance.

In this case, it is clear that, as in **Aguillard**, there was not "such a difference in bargaining positions between the parties so as to justify the application of the principle of contract of adhesion to the arbitration clause." **Aguillard**, 04-2804 at 22, 908 So.2d at 16-17. As **Aguillard** explained in defining a contract of adhesion, "[o]wing to the necessities of modern life a particular kind of contract has been developed where one of the parties is not free to bargain." *Id.*, 04-2804 at 10, 908 So.2d at 9 (quoting Saul Litvinoff, *Consent Revisited: Offer, Acceptance, Option, Right of First Refusal, and Contracts of Adhesion in the Revision of the Louisiana Law of Obligations*, 74 La.L.Rev. 699, 757-59 (1986-1987)). Such a lack of bargaining power exists where "[t]he party in the weaker position is left *with no other choice* than to adhere to the terms proposed by the other." *Id.* (Emphasis added.) Typical examples of such contracts include those entered into with "airlines, public utilities, railroad or insurance companies." *Id.*

In **Aguillard**, this court recognized that the relative bargaining positions of the real estate auctioneer and the individual auction participant involved in that case were not so unequal as to justify invalidating the arbitration clause on grounds of adhesion,

reasoning that, although the participant was required to sign the agreement containing the arbitration clause in order to participate in the auction, "the underlying transaction, the real estate auction, [was] not ... such a necessary transaction" that the participant "was compelled to enter it." *Id.*, 04-2804 at 22-23, 908 So.2d at 16-17. Indeed, the participant could have avoided arbitration by not signing the agreement, not participating in the auction, and simply walking away. See *id.* 04-2804 at 22, 908 So.2d at 17. Under such circumstances, the court found "nothing sufficient to establish the [auctioneers] were in such a superior bargaining position as to render the [auction participant] a far weaker party or the contract adhesionary." *Id.* 04-2804 at 23, 908 So.2d at 17.

The rationale of the court in **Aguillard** applies with equal force to the Sky Zone Agreement at issue in this case. Here, the Agreement concerns not a "necessity of modern life," but a purely voluntary recreational activity. The plaintiff was not compelled–physically, economically or otherwise–to visit the trampoline park, jump on its trampolines, or sign the Agreement containing the arbitration clause. Jumping on a trampoline is simply not a practical necessity of modern living like water, electricity, or even airline flight. Like the auction participant in **Aguillard**, the plaintiff, here, retained the ultimate bargaining chip in this situation: he could have refused to sign Sky Zone's Agreement, walked away, and pursued an alternative form of recreational activity. Given these circumstances, there is simply no evidence to establish that Sky Zone was in such a superior bargaining position as to render the plaintiff a far weaker party or the contract adhesionary.

Further, and also contrary to the majority, I find nothing in the Sky Zone Agreement, itself, that would call into question the validity of the plaintiff's consent to the terms of the Agreement. This determination is based on my analysis of the

3

three factors that are addressed in the majority's **Aguillard** analysis–(1) the physical characteristics of the arbitration clause; (2) the distinguishing features of that clause; and (3) the mutuality of the clause–and my differing conclusions as to each.

In addressing the first **Aguillard** factor–the physical characteristics of the arbitration clause–the majority acknowledges that "the arbitration language is consistent in size and font with the other provisions in Agreement." **Duhon**, slip op. at 9. In fact, the clause is not in small print or otherwise unreadable, but is just as legible as every other word in the Agreement. The majority apparently concedes, therefore, and I agree, that the physical characteristics of the arbitration clause weigh in favor of finding the clause enforceable.

In addressing the second of the **Aguillard** factors–the distinguishing features of the clause–the majority, in my view, falls into error. It downplays the very feature that distinguishes the arbitration clause and calls its attention to the participant: the box located next to the paragraph in which the clause appears, *a box which must be affirmatively checked before the Agreement can be completed*. The majority chooses, instead, to focus solely on the fact that the arbitration language is not set out in a stand-alone paragraph to reach the conclusion that it is "camouflaged" and "cloak[ed] ... within a blanket of boilerplate language" to such an extent that plaintiff could not have not consented to its terms, despite affirmatively indicating by checking the electronic box that he did just that. See **Duhon**, 16-0818, slip op. at 10. While it is true that the arbitration clause appears in a paragraph not limited to the single topic of arbitration, more than one-half of that paragraph concerns the agreed-upon arbitration, its procedure, its locale, governing law, and the consequences for refusing or otherwise breaching the agreement to arbitrate.[2] The arbitration language is hardly

---

[2] See **Duhon**, 16-0818, slip op'n at 3.

camouflaged. Further, the majority's suggestion, that failure to set the arbitration language out in a stand-alone paragraph fails to sufficiently distinguish the arbitration clause, ignores the check box. See **Duhon**, 16-0818, slip op. at 10. The presence of that box is akin to, and has the same legal force and effect as, requiring the plaintiff to initial next to the paragraph, a requirement that affirmatively alerts the participant to the contents and significance of the paragraph.[3] Like the arbitration provision in **Aguillard**, and contrary to the majority, I find the arbitration language in the Sky Zone Agreement was not concealed in any way and that the use of the electronic check boxes reasonably distinguished the clause.

Finally, as to the third **Aguillard** factor, the mutuality of the obligation to arbitrate, the majority acknowledges that "**Aguillard** did not create a *per se* rule that any degree of non-mutuality in an arbitration agreement renders it unenforceable,"[4] and that "requiring term-for-term mutuality in an arbitration clause could risk running afoul of the [Federal Arbitration Act],"[5] but then inexplicably invalidates the arbitration clause in the Sky Zone Agreement precisely because it lacks the term-for-term mutuality that it acknowledges the law does not require, and may even prohibit.[6] In truth, the only difference between the arbitration clause in **Aguillard** and the one in the Sky Zone Agreement is the use of the "I" in the Sky Zone Agreement. However, the mere use of the word "I" does not render the clause non-mutual,

---

[3] Modern technology has introduced what is referred to as a "clickwrap" agreement as a mechanism for having a "user manifest his or her assent to the terms of the ... agreement by clicking on an icon." See **Register.com, Inc. v. Verio, Inc.**, 356 F.3d 393, 429 (2nd Cir. 2004).

[4] See **Duhon**, 16-0818, slip op. at 13.

[5] See **Duhon**, 16-0818, slip op. at 12.

[6] See **Duhon**, 16–0818, slip op. at 11-13.

particularly in light of the fact, acknowledged by the majority, that the Agreement does not reserve to Sky Zone the right to pursue litigation.[7]

Consequently, unlike the majority, I find an analysis of all four of the factors outlined in **Aguillard** leads to the conclusion that the Sky Zone Agreement is not adhesionary and is valid and enforceable. This conclusion is strengthened, not only by the strong legislative policy that favors arbitration,[8] but also by the long-standing principle that signatures to documents are not mere ornaments.[9] As **Aguillard** notes: "It is well[-]settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him." *Id.*, 04-2804 at 22, 908 So.2d at 17. In this case, as in **Aguillard**, the plaintiff signed the Agreement acknowledging that he "had sufficient opportunity to read this entire document ... understand this Agreement and ... voluntarily agree to be bound by its terms."[10] As in **Aguillard**, there was no evidence that the plaintiff was not in an equal bargaining position with Sky Zone because the plaintiff could have avoided arbitration and the contractual provisions as a whole by simply not signing the Sky Zone Agreement and pursuing an alternative recreational activity. Also as in **Aguillard**, there is nothing in the Sky Zone Agreement itself–its physical or distinguishing characteristics–that would call into question the validity of the plaintiff's consent to the terms of the Sky Zone Agreement as indicated by his signature. I would affirm the decision of the court of appeal.

---

[7] See **Duhon**, 16-0818, slip op. at 11.

[8] See **Duhon**, 16-0818, slip op. at 5 (citing La. R.S. 9:4201, *et seq*.).

[9] See **Tweedel v. Brasseaux**, 433 So. 2d 133, 137 (La. 1983) (quoting **Boullt v. Sarpy**, 30 La.Ann. 494, 495 (La. 1878)).

[10] See **Duhon**, 16-0818, slip op. at 4.

10/19/2016

SUPREME COURT OF LOUISIANA

NO. 2016-CC-0818

JAMES DUHON

VERSUS

ACTIVELAF, LLC, D/B/A SKYZONE LAFAYETTE
AND UNDERWRITERS AT LLOYDS, LONDON

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF EAST BATON ROUGE*

**GUIDRY, J.**, dissents and assigns reasons.

I respectfully dissent from the majority's reversal of the ruling of the court of appeal. In my view, the arbitration clause in the Sky Zone Agreement is not part of a contract of adhesion which would render it unenforceable.

As the majority correctly states, a contract of adhesion is a "standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party." Aguillard v. Auction Management Corp., 2004-2804, 2004-2857, p.9 (La. 6/29/05), 908 So.2d 1, 8-9. It is undisputed that the real issue in a contract of adhesion analysis is consent, whether the non-drafting party, considered to be the weaker party, truly consented to all the printed terms. Id. In addressing the issue of consent, a court must look to the form, print, or unequal terms of the contract by considering the factors set forth in Aguillard, namely, the physical characteristics and distinguishing features of the arbitration clause, the relative bargaining position of the parties, and the mutuality or lack thereof in the arbitration clause. Id., 2004-2804, 2004-2857, p. 9, 908 So.2d at 17.

As an initial matter, I disagree with the majority's finding that the arbitration clause was hidden and camouflaged within the Sky Zone Agreement in such a way that would indicate the plaintiff's consent to the agreement could be called into

question. Neither the print nor the font size of the arbitration clause differed from that of the remainder of the contract executed by the plaintiff. The standard form agreement was relatively short and straightforward, consisting of a total of nine paragraphs, three of which were set off with boxes to be checked to signify the patron's consent. The arbitration clause, while not set off alone, consisted of one-half of a paragraph that was required to be checked off. The clause commenced midway through the paragraph and ran until the end of the paragraph. The plaintiff does not dispute that he checked off the box reflecting his consent to the terms of the arbitration clause.

Furthermore, the record is absent any evidence that the plaintiff was not in an equal bargaining position with the defendants. At the heart of the transaction, the plaintiff was seeking admittance to a recreational facility. Indisputably, this was not a contract to which the plaintiff was compelled to enter into the terms. He could have simply elected to not sign the agreement and bypass the recreational activity. Instead, the plaintiff signed the arbitration agreement acknowledging that he had sufficient opportunity to read the entire document and understood its terms. Having signed the agreement, the plaintiff cannot seek to avoid his obligations by contending that he did not read or understand it. Basic contract law dictates that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him. Coleman v. Jim Walter Homes, Inc., 2008-1221, p. 7 (La. 3/17/09), 6 So.3d 179, 183 (citing Tweedel v. Brasseaux, 433 So.2d 133, 137 (La.1983)). To overcome the presumption, the party has the burden of proving with reasonable certainty that he was deceived. Id. The plaintiff is unable to satisfy this burden, because there is no evidence in the record that the plaintiff made any effort to contact the defendant for an explanation or to discuss the terms of the contract in

2

any respect.

Next, the arbitration clause at issue substantially mirrors the <u>Aguillard</u> arbitration clause, which this court found to be mutual. The plaintiff has not shown anything in the clause that reserves Sky Zone's right to litigate disputes related to the agreement that is not equally afforded to the plaintiff. As such, the majority errs in finding the lack of mutuality as to the parties.

Finally, in <u>Aguillard</u>, this court addressed the presumption of arbitrability:

> [E]ven when the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration. The weight of this presumption is heavy and arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue. Therefore, even if some legitimate doubt could be hypothesized, this Court, in conjunction with the Supreme Court, requires resolution of the doubt in favor of arbitration.

<u>Id.</u>, 04-2804 at 18, 908 So.2d at 25.

In light of the controlling law indicating the favorable consideration afforded arbitration agreements, coupled with the plaintiff's failure to satisfy his burden of proving the contract was adhesionary, the majority erred in invalidating the contract. Accordingly, I respectfully dissent and would affirm the ruling of the court of appeal.

3

10/19/16

SUPREME COURT OF LOUISIANA

No. 2016-CC-0818

JAMES DUHON

VERSUS

ACTIVELAF, LLC, D/B/A SKYZONE LAFAYETTE AND
UNDERWRITERS AT LLOYDS, LONDON

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF EAST BATON ROUGE

CLARK, J., concurring.

I find that the contract at issue lacks mutuality to such an extent that the contract is adhesionary. Not only does the contract bind only patrons to arbitration, the contract stipulates that if a patron files a lawsuit against Sky Zone, the patron is liable for $5,000 in liquidated damages. At the same time, Sky Zone is free to file a lawsuit against the patron without any penalty.

**SUPREME COURT OF LOUISIANA**

**No. 2016-CC-0818**

**JAMES DUHON**

**VERSUS**

**ACTIVELAF, LLC, D/B/A SKYZONE LAFAYETTE AND UNDERWRITERS AT LLOYDS, LONDON**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST CIRCUIT, PARISH OF EAST BATON ROUGE**

**Hughes, J., concurring.**

Although I do not agree that the arbitration language was hidden, I concur that it lacked mutuality, and thus with the result.

SUPREME COURT OF LOUISIANA

No. 2016-CC-0818

JAMES DUHON

VERSUS

ACTIVELAF, LLC, D/B/A SKYZONE LAFAYETTE AND
UNDERWRITERS AT LLOYDS, LONDON

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF EAST BATON ROUGE

**CRICHTON, J.**, additionally concurs and assigns reasons.

I agree with the majority decision, and write separately to emphasize that I do not view this decision as a rejection of arbitration agreements. To the contrary, Louisiana law favors the enforcement of arbitration agreements. *See* La. R.S. 9:4201 (Validity of arbitration agreements). Consistent with the Federal Arbitration Act ("FAA"), arbitration agreements must be placed "upon the same footing" as other types of contracts." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974); *see also* 9 U.S.C. § 2. But just as Louisiana law should not create obstacles to the enforceability of arbitration agreements, *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (applying the FAA to preempt a state law condition to the enforceability of an arbitration agreement), neither should Louisiana law create exceptions for arbitration agreements that do not exist for other types of contracts.

Without question, arbitration can be a waiver of the traditional access to our judicial system. And so, applying *Aguillard v. Auction Management Corp.*, 04-2804 (La. 6/29/05), 908 So. 2d 1, this waiver must be in accord with Louisiana contract law, otherwise a party's consent may be called into question. Thus, a

1

business entity or individual seeking to draft a contract that includes an arbitration agreement must meet all of the elements of an enforceable contract.

By concealing the existence of the arbitration agreement, this agreement deprives a party of redress in the justice system. To make a bad situation worse, this agreement does not bind Sky Zone to arbitration, yet it penalizes a Sky Zone patron—*but not Sky Zone*—for seeking to initiate a lawsuit. These blatant asymmetries exhibit a stunning lack of draftsmanship and fail to adhere to the principles set forth in *Aguillard*. Accordingly, in my view, this Court is bound to deem this agreement unenforceable.